# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMOND LEE WILLIAMS<br>c/o Turnipseed Law, LLC<br>8710 Cameron Street #524<br>Silver Spring, MD  20910<br><br>             Plaintiff,<br><br>     vs.<br><br>The United States Department of Veteran Affairs<br>1722 I Street, NW, Suite 302<br>Washington, DC 20421<br><br>             Defendant. | Case No.: |

## COMPLAINT FOR NEGLIGENCE RESULTING IN
## PERSONAL INJURIES AND MONETARY DAMAGES

COMES NOW the Plaintiff, Damond Lee Williams (herein after referred to as "Plaintiff"), by and through his attorney Danielle Turnipseed, Esq., of Turnipseed Law, LLC, and files this cause of action against the Defendant herein states, and alleges as follows:

## JURISDICTION, VENUE AND JURY TRIAL REQUEST

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) and the Plaintiff seeks damages in excess of $75,000.00.

2. The venue is proper pursuant to 28 U.S.C. §1391(c).

3. Plaintiff requests trial by jury.

## THE PARTIES

4.  Plaintiff is domiciled in the State of Florida, and is a resident of the State of Maryland.

5.  Defendant United States Department of Veteran Affairs (hereinafter referred to as "the VA") is a federal government agency, which operates in the District of Columbia.

## COMPLIANCE WITH THE FEDERAL TORT CLAIMS ACT

6.  Plaintiff re-alleges paragraphs 1-5.

7.  On or about October 16, 2015, Plaintiff submitted his Standard Form 95, supplemental demand packet, and a volume of supporting documents to VA's Office of Regional Counsel located at 1722 I Street, NW, Suite 302, Washington, DC 20421.

8.  VA's designated counsel acknowledged receipt and sent a several follow-up questions in response to Plaintiff's submission.

9.  The questions presented were timely answered, but no reply was ever provided by the VA.

10. On numerous occasions through letter and phone calls the VA was contacted on Plaintiff's behalf, but the VA representative handling Plaintiff's claim was non-committal with providing a timeline for completion and demonstrated no apparent desire to resolve this matter by either offering a rejection or counter to Plaintiff's demand in his Standard Form 95.

11. Being that no response was ever received by Plaintiff and he timely filed his grievance and complied with request from the VA, but still received no decision from the VA, pursuant to the Federal Tort Claims Act he now has standing to file suit against the VA.

## BACKGROUND

12.     Plaintiff re-alleges paragraphs 1-11.

13.     Plaintiff is a United States Military Veteran.  Plaintiff being honorably discharged from the United States Air Force affords him the privilege of receiving medical care from the VA.

14.     Plaintiffs' classification in the United States Air Force was an aircraft fuel maintenance engineer.  Upon separation from the Armed Services this skillset kept Plaintiff gainfully employed while traveling the world.

15.     In 2013, due to the trade's taxing nature (specifically operating heavy machinery and the potential impacts of daily being exposed to chemicals), Plaintiff decided to make a professional change with the start of Aspiration Fitness, LLC.  Aspiration Fitness, LLC is a personal training company dedicated to helping clients get smart about taking care of their physical fitness coupled with meal advisement.

16.     Plaintiff's hopes of starting said company were dashed due to the Defendant's breach of professional duty of care, resulting in personal injuries to Plaintiff, limiting his ability to work as a personal trainer.  Plaintiff no longer able to be a physical fitness trainer has now returned to working as an aircraft fuel maintenance engineer.

## GENERAL ALLEGATIONS
### I. NEGLIEGNCE

17.     Plaintiff re-alleges paragraphs 1 – 16.

18. Due to developing difficulty with swallowing and walking, on or about October 30, 2013, Plaintiff visited VA Hospital to obtain a medical evaluation and treatment.

19. Prior to his VA Hospital visit, Plaintiff's mother and sister, both of whom are registered nurses, observed his condition, and encouraged Plaintiff to seek immediate professional evaluation and treatment at the VA Hospital.

20. On or about October 30, 2013, Plaintiff, hobbling with a cane that he borrowed from his mother, entered the VA Hospital located at 50 Irving Street, NW, Washington, DC.

21. Approximately a week prior the October 30th VA Hospital visit, Plaintiff completed a cross-country athletic competition in which he ran, jumped, and did callisthenic type exercises without any unexpected difficulty.

22. At the VA Hospital, Plaintiff was evaluated and treated by a nurse practitioner ("hereinafter referred to as NP").

23. Although Plaintiff complained of issues with swallowing connected with throat, jaw pain, and difficulty with walking due to swelling in his left foot, the NP's progress notes incredibly only reflect her attention to Plaintiff's "pain and swelling of the neck and jaw." The NP also noted slight swelling in Plaintiff's jaw.

24. The NP provided Plaintiff with patient education on pain management with medications, noted a history of requesting antibiotics for dental issues, performed an oral exam, referred Plaintiff to a provider, and documented misgivings about renewing Plaintiff's antibiotic prescription.

25. The NP spoke to Plaintiff about drug seeking and drug abuse, inferring that Plaintiff was drug seeking because he was drug abusing.

26. It should be noted that due to a history of alcohol and drug abuse in his paternal family, Plaintiff has refrained from ever smoking, intentionally drinking alcohol, or partaking with non-prescribed drugs. Further, it should be noted that notwithstanding his October 30, 2013, medical condition, Plaintiff was in excellent physical condition, independently exercising 4-5 days a week, in addition to training Clients with his personal training business.

27. When the NP performed the oral exam she noted no remarkable findings with no obvious cause for the discomfort. However, it was notated that Plaintiff had right neck swelling with puffiness extending to the thyroid. However, the NP failed to notate Plaintiff's acute left leg pain, swollen foot and ambulation with a cane.

28. The NP's nonfeasance and malfeasance in providing sub-standard care for Plaintiff are in direct contrast to the VA's patient protocols. The VA patient protocols mandate that for a patient with Plaintiff's multiple conditions, at minimum, he should have had a complete blood count lab assessment and an ultrasound of his swollen thyroid.

29. At a bare minimum, the NP should have performed a culture of Plaintiff's throat, examined his left leg and foot, and recommended follow-up in 48-72 hours, or sooner if worrisome symptoms manifested. However, none of this occurred. An extreme aggravating factor, heightening the egregious nature of the NP's negligence, is that Plaintiff was being treated at the main VA Hospital in the region, with all lab equipment for requisite testing available on site. The purpose of the aforementioned exams is to determine the source of medical need and potential intervention for the patient.

30. Even with Plaintiff appearing disheveled and sickly, the NP breached her duty in providing care, inaccurately assessing and assuming Plaintiff was a drug seeking patient.

31.     On November 3, 2013, just four (4) days after his visit with the NP, Plaintiff was in Everett, Washington to retrieve items from his storage facility.  Each day after his visit at the VA Hospital, unknown to Plaintiff, the infection grew until it crippled him.

32.     Due to being non-ambulatory and physical ill, on November 3, 2013, Plaintiff was admitted into Providence Regional Medical Center, for evaluation and treatment.

33.     At the time of being admitted, Plaintiff's white blood cell count had spiked to forty three thousand two hundred (43,200).

34.     On October 30, 2013, if the VA's NP had followed VA patient protocols by ordering a complete blood count, the lab results would have revealed that Plaintiff needed immediate medical intervention to address the growing infection in his body.

35.     By November 3, 2013, Plaintiff's bacterial infection had become so aggressive that it was difficult to assess, causing intense suffering for Plaintiff.  Physically, his leg had swollen so large that he could no longer walk.  Also, noted in Providence Medical Center records is that Plaintiff states he advised the Defendant's NP about the infection/issue with his left foot, but that is absent from the medical notes of the Defendant's NP.

36.     Due to a need for advanced medical care and surgical expertise on November 3, 2013, a transfer recommendation was submitted for Plaintiff to be transferred to Harborview Medical Center.

37.     At Harborview Medical Center it was discovered that Plaintiff had such significant swelling and was showing signs of overall body infection that the plan of care to save Plaintiff's left leg was to perform a fasciotomy procedure.  During the fasciotomy, the medical staff made four (4) large incisions on said area; ultimately the efforts saved Plaintiff's limb.

Additionally, the muscle mass in Plaintiff's left leg coupled with his stellar health were both significant factors in him being able to keep his left leg.

38. To address pain management at Harborview Medical Center, the medical staff treated Plaintiff with narcotic medication to include Morphine and Roxicodone. Due to the extensive signs of sepsis and potential life threatening consequences from the unknown and uncontrolled infection, Plaintiff was prescribed a cocktail of antibiotics. They were: Clindamycin, Levofloxacin, Penicillin G, and Vancomycin.

39. On November 14, 2013 after the bacterial infection was eradicated from Plaintiff's body and his condition was stable, he was discharged from Harborview Medical Center. After being released from Harborview Medical Center, Plaintiff could not immediately travel.

40. Plaintiff incurred hotel expenses while staying in Washington State. In addition, during this time, Plaintiff suffered in extreme pain.

41. Defendant's departure from the standard of care is the sole and proximate cause of the bodily injury sustained by Plaintiff and the permanent limitations of his limited physical condition. If Defendant's NP would have followed mandated patient protocol, Plaintiff's condition could have been timely evaluated and better managed with early medical interventions preventing the infection from spreading and growing. Thus, preventing Plaintiff from being hospitalized, enduring pain and suffering, and enduring permanent physical charge.

## II. NEGLIGENT SUPERVISION

42. Plaintiff re-alleges paragraphs 1 – 41.

43. Plaintiff endured months of post-operative therapy at the VA Hospital in Washington, DC.

44. During his extensive therapy treatments, Plaintiff developed positive relationships with supportive health care providers and administrators at the VA Hospital.

45. Not only did some of the VA Hospital care providers and administrators make verbal admissions about the negligence of the VA NP who treated Plaintiff on October 30, 2013, but they also informed Plaintiff that his treating NP on October 30, 3013, was on work restrictions or probation or both. Said work limitations were supposed to limit the NP from providing direct patient care without supervision.

46. On October 30, 2013, when the VA's NP treated Plaintiff, she was not supervised nor did she inform Plaintiff of her restricted work status at the VA.

47. But for the VA's failure, Plaintiff would not have endured such a traumatic and life altering experience.

48. The VA's failure to appropriately manage staff while administering quality care caused harm to Plaintiff.

## CLAIM FOR DAMAGES

49. Plaintiff re-alleges paragraphs 1 – 48.

50. Upon returning to Maryland, Plaintiff was under the care of the medical staff at the VA's facility. Plaintiff underwent months of physical therapy and substantial wound care.

51. Even with all of the follow-up treatments, the permanency and debilitating impact of Plaintiff's injuries will only increase as he ages.

52. Every evening, Plaintiff has swelling in his ankle and foot area. He wears a compression stocking to mitigate pain and swelling. The bodily injuries suffered by Plaintiff are a direct result of the negligence of the Defendant's NP.

53. Further, Plaintiff has developed neuropathy resulting from the swelling and compression of nerves in and around his ankle and foot. As Plaintiff ages his mobility will be limited and his career options reduced. Moreover, his plan of becoming a personal fitness trainer is not an option and does appear to be a long-term proposition.

54. Plaintiff has incurred medical expenses totaling $62,063.00, from the care provides in Washington state.

55. Plaintiff also incurred hotel expenses and was not able to work for six (6) months following his medical procedures in Washington.

56. Due to his permanent physical limitations, Plaintiff can longer develop his physical fitness company.

57. Plaintiff is now back working as an aircraft fuel maintenance engineer. However, due to his physical limitations, he will soon have to change careers because his leg and foot are constantly swollen after working with aircrafts, a condition that was not present prior to this set of circumstances caused by the VA's negligence.

58. The rest of Plaintiff's life, he will suffer from the vestiges of the negligence of the Defendant. His career options are limited and he will not be able to enjoy his passion of working out and training others.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against the Defendant as follows:

A. For such compensatory damages occasioned by the negligent conduct of Defendant as may be proved at the trial of this case;

B. For his past and future medical expenses incurred and to be incurred;

C. For his past and future lost wages and wage earning capacity;

D. For his lost household services;

E. For his loss of enjoyment and quality of life;

F. For his costs of suit incurred herein;

G. For pre-judgment and post-judgment interest, at the rate allowed by law, on all such amounts awarded from the date of filing this Complaint and after judgment is entered;

H. For his reasonable attorney fees to be paid;

I. That the amount requested in Plaintiff's Standard Form 95, one million seven hundred fifty thousand dollars ($1,750,000.00 USD) be award to him; and

J. For such other and further relief as the Court deems proper.


Dated: October 16, 2016                     Respectfully Submitted,


/s/   Danielle P. Turnipseed, Esq.
Danielle P. Turnipseed, Esq.,
DCB# 1001033
Turnipseed Law, LLC
8710 Cameron Street #524
Silver Spring, MD  20910
301.589.5881
danielle@turnipseedlaw.com
*Counsel for Plaintiff*