# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAMOND LEE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-2062 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE EXPERT OPINIONS AND FOR SUMMARY JUDGMENT

JESSIE K. LIU, D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

PAUL CIRINO
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Phone: (202) 252-2529
Fax: (202) 252-2599
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:  July 24, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

PROCEDURAL HISTORY.................................................................................................. 6

PLAINTIFF'S EXPERT AND HIS PROPOSED OPINIONS........................................ 7

STANDARDS OF REVIEW .............................................................................................. 10

I.     LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE ................. 10

II.    MOTIONS FOR SUMMARY JUDGMENT ................................................. 11

III.   THE FEDERAL TORT CLAIMS ACT ..................................................... 12

MOTION TO PRECLUDE DR. PORTER'S PROPOSED OPINIONS ..................................... 14

I.     DR. PORTER IS NOT QUALIFIED AS AN EXPERT BY KNOWLEDGE,
       SKILL, EXPERIENCE, TRAINING OR EDUCATION. ............................................. 14

II.    DR. PORTER'S TESTIMONY WILL NOT ASSIST THE TRIER OF FACT TO
       UNDERSTAND THE EVIDENCE OR DETERMINE A FACT IN ISSUE. ................ 15

       A.    The National Standard of Care in the District of Columbia ............................... 16

       B.    Dr. Porter Identified the Wrong Standard of Care ............................................. 16

       C.    Dr. Porter Has Not Identified a Nationally Applicable Standard of Care. .......... 17

III.   DR. PORTER'S PROPOSED TESTIMONY DOES NOT SATISFY THE
       REMAINING REQUIREMENTS OF RULE 702. ....................................................... 19

       A.    Dr. Porter's Testimony Is Based upon Insufficient Facts or Data ...................... 19

       B.    Dr. Porter's Testimony Is Not Based on Reliable Principles and Methods.......... 20

MOTION FOR SUMMARY JUDGMENT................................................................................ 21

I.     WITHOUT EXPERT TESTIMONY REGARDING THE APPLICABLE
       STANDARD OF CARE, PLAINTIFF CANNOT SATISFY THE ELEMENTS
       OF A FTCA CLAIM ................................................................................................... 21

II.    EVEN IF DR. PORTER'S PROPOSED OPINIONS ARE ADMISSIBLE,
       DEFENDANTS DID NOT BREACH THE STANDARD OF CARE AS
       A MATTER OF LAW ................................................................................................. 22

III.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO
        PLAINTIFF'S CLAIM BASED ON NEGLIGENT SUPERVISION............................24

CONCLUSION ……………………………….........…………………………………………….... 25

# TABLE OF AUTHORITES

## **Federal Cases**                                                                                    Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 11, 12

*Bonieskie v. Mukasey*,
   540 F. Supp. 2d 190 (D.D.C. 2008) ........................................................................ 12

*Briggs v. Wash. Metro Area Transit Auth.*,
   481 F.3d 839 (D.C. Cir. 2007). ......................................................................... 16, 18

*Carmichael v. West*,
   Civ. A. No. 12-1969 (BAH), 2015 WL 10568893 (D.D.C. Aug. 31, 2015). .......... 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 11

*Cope v. Scott*,
   45 F.3d 445 (D.C. Cir. 1995) .................................................................................. 13

*Cortes-Irizarry v. Corporacion Insular de Seguros*,
   111 F.3d 184 (1st Cir. 1997). ................................................................................. 14

*Crowley v. Perdue*,
   318 F. Supp. 3d 277 (D.D.C. 2017). ...................................................................... 14

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993). ........................................................................ 2, 10, 11, 14

*David v. District of Columbia*,
   246 F. Supp. 3d 647 (D.D.C. 2017) ........................................................................ 12

*Diamond v. Atwood*,
   43 F.3d 1538 (D.C. Cir. 1995) ............................................................................... 11

*Federal Deposit Insurance Corp. v. Meyer*,
   510 U.S. 471 (1994). .............................................................................................. 12

*Frazza v. United States*,
   529 F. Supp. 2d 61 (D.D.C. 2008). ....................................................................... 18

*Godfrey v. Iverson*,
   559 F.3d 569 (D.C. Cir. 2009). .............................................................................. 24

*Haney v. Marriott Int'l, Inc.*,
   Civ. A. No. 05-25091 (JDB), 2007 WL 2936087 (D.D.C. Oct. 9, 2007) ................ 13

*Heller v. District of Columbia,*
 801 F.3d 264 (D.C. Cir. 2015). ........................................................................... 21

*Honda v. Clark,*
 386 U.S. 484 (1967). ........................................................................................... 13

*Kosberg v. Washington Hospital Center, Inc.,*
 394 F.2d 947 (D.C. Cir. 1968) ............................................................................. 24

*Kumho Tire Co. v. Carmichael,*
 526 U.S. 137 (1999) ............................................................................................. 10

*Lindsey v. Rice,*
 524 F. Supp. 2d 55 (D.D.C. 2007) ....................................................................... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986) ............................................................................................. 11

*Novak v. Capital Mgmt. & Dev. Corp.,*
 452 F.2d 902 (D.C. Cir. 2006) ....................................................................... 13, 22

*Potter v. District of Columbia,*
 558 F.3d 542 (D.C. Cir. 2009) ............................................................................. 12

*Richards v. United States,*
 369 U.S. 1 (1962). ............................................................................................... 13

*United States v. Testan,*
 424 U.S. 392 (1976). ........................................................................................... 12

**State Cases**                                                                        Page(s)

*Brown v. Argenbright Sec., Inc.,*
 782 A.2d 752 (D.C. 2001). ................................................................................... 24

*Clark v. District of Columbia,*
 708 A.2d 632 (D.C. 1997). ................................................................................... 16

*District of Columbia v. Beretta, U.S.A., Corp.,*
 847 A.2d 1127 (D.C. 2004). ................................................................................. 13

*District of Columbia v. Peters,*
 527 A.2d 1269 (D.C. 1987). ................................................................................. 13

*Griffin v. Acacia Life Ins. Co.,*
 925 A.2d 564 (D.C. 2007). ................................................................................... 24

*Hill v. Medlantic Health Care Grp.,*
 933 A.2d 314 (D.C. 2007). ................................................................................... 18

*Meek v. Shephard*,
   484 A.2d 579 (D.C. 1984). ................................................................. 16

*Morrison v. McNamara*,
   407 A.2d 555 (D.C. 1979). ............................................................. 16, 24

*Nwaneri v. Sandidge*,
   931 A.2d 466 (D.C. 2007). ......................................................... 13, 17, 18

*Strickland v. Pinder*,
   899 A.2d 770 (D.C. 2006). ......................................................... 17, 18

*Washington v. Washington Hosp. Ctr.*,
   579 A.2d 177 (D.C. 1990). ................................................................. 13

## **Statutes**

42 U.S.C. § 1346(b). ................................................................. 13

42 U.S.C. § 2679(a) ................................................................. 13

## **Rules**

Fed. R. Civ. P. 56(a) ................................................................. 11

Fed. R. Civ. P. 56(e) ................................................................. 11

Fed. R. Evid. 401 ................................................................. 10

Fed. R. Evid. 702 ................................................... 1, 2, 10, 15, 19, 21, 22

## **Other Sources**

https://www.merriam-webster.com/ ................................................. 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DAMOND LEE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-2062 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**TO PRECLUDE EXPERT OPINIONS AND FOR SUMMARY JUDGMENT**

Defendants United States Department of Veterans Affairs and the United States of America respectfully submit this Memorandum of Law in Support of their Motion to Preclude Expert Opinions and for Summary Judgment.

**PRELIMINARY STATEMENT**

This medical malpractice case involves Plaintiff's claim that the staff at the VA Medical Center in Washington, D.C., failed to properly treat Plaintiff's left foot on October 30, 2013. Plaintiff has disclosed Fernando A. Porter, M.D., a Maryland-based home primary care doctor, as an expert to testify about the applicable standard of care that Defendants supposedly breached.

Dr. Porter's proposed opinions, however, are inadmissible under Federal Rule of Evidence 702 for several reasons. *First*, Dr. Porter is not qualified to offer an opinion on the applicable standard of care because he has no established expertise in the area of cellulitis or skin-related infections. *Second*, Dr. Porter has erroneously proposed a standard of care that is based on cellulitis, even though there is no evidence that Plaintiff had cellulitis during his medical visit. Even if treatment for cellulitis were relevant to this case, Dr. Porter has not

1

identified a standard of care that is nationally applicable, which is an essential element of

Plaintiff's burden under the Federal Tort Claims Act.  *Third*, Dr. Porter's proposed opinions are

nothing more than his own unsupported views about what Defendants should have done to treat a

patient with cellulitis, without reference to the actual facts of the case, any established

methodology, or applicable protocols or guidance.  These proposed expert opinions are

inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589

(1993).

Because Plaintiff can present no admissible testimony supporting a nationally applicable

standard of care that is relevant to the facts of this case, Defendants are entitled to summary

judgment.  Even if Dr. Porter's proposed opinions were admissible, Plaintiff cannot establish that

Defendant breached the standard of care.  That is because Dr. Porter's opinion is that Defendants

should have examined Plaintiff's left foot.  But there is no dispute that at least one Nurse

Practitioner did examine Plaintiff's left foot, as Plaintiff himself testified.  The facts are

undisputed that Defendants treated Plaintiff exactly how Dr. Porter said that they should have.

For these reasons, the Court should grant this motion, preclude Dr. Porter from offering

expert opinions under Rule 702, and grant summary judgment in favor of Defendants.

## FACTUAL BACKGROUND

Plaintiff is a military veteran who is domiciled in Florida.  Am. Compl.[1] ¶¶ 4, 13.  During

the relevant time period, Plaintiff was 38 years old and, by all accounts, in good physical

---

[1]  Citations to "Am. Compl." refer to the Amended Complaint for Negligence Resulting in
Personal Injuries and Monetary Damages.  The pleading is an exhibit to Plaintiff's renewed
motion to amend his complaint, filed January 24, 2018.  ECF No. 29-1.

condition.  Plaintiff, a former aerospace company worker, was working independently as a personal physical fitness trainer.  Exhibit A at 8.

On or about October 20, 2013, Plaintiff competed in a strenuous athletic competition known as "Tough Mudder," in which competitors navigate an obstacle course on wooded or rocky terrain over 12 miles.  Am. Compl. ¶ 20; Pl. Depo.[2] at 22-23.  Plaintiff sustained a scrape on his left foot caused by a pebble inside his shoe; he treated the scrape by cleaning the foot and applying a bandage.  Pl. Depo. at 23-24.  Within a few days, Plaintiff noticed that the left foot had become stiff and was swollen, causing him difficulty to walk.  *Id.* at 25.

On October 29, 2013, Plaintiff called the VA Medical Center's Medical Advice Line with complaints about pain and swelling in the jaw and throat.  Am. Compl. ¶ 20; Exhibit C at 61.  The contemporaneous notes from the three-minute call reflect that Plaintiff complained of swelling and pain in his right jaw and the back of his throat and that he wanted to pick up a prescription for antibiotics without seeing a dentist or other provider.  Exhibit C at 61.  The notes reflect that Plaintiff declined to be seen by a dentist for x-rays and diagnosis of dental pain.  *Id.*

On the morning of October 30, 2013, Plaintiff presented himself, without an appointment, at the VA Medical Center, using a cane.  Am. Compl. ¶¶ 20, 22; Exhibit A at 9; Exhibit C at 58-61.  Plaintiff testified that he initially met with a nurse to whom he mentioned that he had problems walking, swallowing, and that his foot was swollen; in response, the nurse took his temperature, but Plaintiff does not recall whether the nurse looked at his foot.  Pl. Depo. at 34-35.  The notes from the initial nursing interview report that Plaintiff's "chief complaint" was pain and swelling of his neck and jaw from what he believed was a dental abscess near the right lower

---

[2]  Citations to "Pl. Depo." refer to the transcript of Plaintiff's deposition, taken March 4, 2019.  Relevant excerpts from the transcript are submitted herewith as Exhibit B.

molar, over the past four days.  Exhibit C at 58-59.  The notes state that Plaintiff was alert and oriented as to person, place, and time, and in no apparent distress, but with slight swelling in the right side of the jaw.  *Id.* at 59.  His temperature and blood pressure were normal.  *Id.*

Plaintiff was then called into a consultation room to be seen by Nurse Practitioner Marguerite McGarrah.  At his deposition, Plaintiff testified that he told Ms. McGarrah that he had a problem swallowing, that he didn't feel well, that his arm was getting stiff, and that his neck and foot were swollen.  Pl. Depo. at 35-36.  In response, Nurse Practitioner McGarrah touched his neck to feel his glands and "took a look at my foot."  *Id.* at 36.  Plaintiff testified that, on that day, his left foot was stiff, noticeably swollen, with a reddish tint over three-quarters of the surface of the foot.  *Id.* at 32-33.  Plaintiff recalled that he took off at least his left shoe and sock so that he could be examined.  *Id.* at 38, 43.  Plaintiff said he does not recall Nurse Practitioner McGarrah making any comment regarding his foot after she examined it.  *Id.* at 44-45.  Plaintiff did not ask the nurse to take any tests regarding his foot.[3]  *Id.* at 45.

Nurse Practitioner McGarrah's contemporaneous notes demonstrate that she inspected the patient's mouth, and noted that it was unremarkable, with no pus, no erythema (redness), no gum edema, but noted slight puffiness of the right neck and thyroid area.  Exhibit C at 59.  Nurse Practitioner McGarrah expressed misgivings about filling a prescription for penicillin, given his past history and the importance of combatting antibiotic resistance by limiting prescriptions to situations where the drugs are absolutely essential; however, she gave Plaintiff a prescription for Penicillin VK.  Exhibit 60-61.  After the consultation, Plaintiff picked up his medication on the first floor of the medical center.  Pl. Depo. at 44.

---

[3]  Plaintiff has stated that Nurse Practitioner McGarrah made comments during the consultation that he regarded as unprofessional, racially insensitive, and stereotypical.  *See* Exhibit A at 9.

Over the next few days, Plaintiff prepared to travel to the Seattle area to gather property that was kept in storage.  *Id.* at 47.  On or about November 1, 2013, Plaintiff boarded an airplane to fly across the country even though he still suffered pain in his neck area and his left foot remained swollen.  *Id.*  At this point, Plaintiff testified, he did not recall that there was any improvement in his condition or that the symptoms had gotten worse.  *Id.*  Due to the cabin pressure, Plaintiff testified, his pain and swelling worsened while he in flight.  *Id.* at 48.

On November 3, 2013, Plaintiff checked himself into Providence Medical Center in Everett, Washington, due to increased pain in his foot.  *Id.* at 51-52.  After a variety of tests, he was transferred the following day to Harborview Medical Center in Seattle.  An examining doctor diagnosed Plaintiff with left leg cellulitis and necrotizing fasciitis.[4]  Upon arrival at Harborview, the doctor described Plaintiff as "an otherwise healthy 38 year old man with a 1 week history of LLE infection that has progressed over the past 3 days."  Exhibit D at 1.  He was described as having "left lower leg with erythema, bullae below the knee to the foot, leg is swollen and edematous compared to right, popped blisters contained clear yellowish/orange fluid, leg superior to knee is normal in caliber, leg is nontender, normal sensation, ROM is limited by swelling but able to move toes and foot at the ankle."  *Id.*  On November 14, 2013, Plaintiff was discharged from the hospital.  Am. Compl. ¶ 39.

Plaintiff claims that he was unable to work until June 2014 due to this injury.  Exhibit A at 6.  As a result of the infection, Plaintiff claims to have long-term nerve damage and chronic

---

[4]  According to an authoritative online dictionary, "cellulitis" is a "diffuse and especially subcutaneous inflammation of connective tissue," and "necrotizing fasciitis is "a severe soft tissue infection that is caused by bacteria (such as Group A streptococci or MRSA) and is marked by edema and necrosis of subcutaneous tissues with involvement of adjacent fascia and by painful red swollen skin over affected areas."  https://www.merriam-webster.com/.

swelling and stiffness from his left kneecap down to his foot.  *Id.* at 5.  Plaintiff also claims to

have suffered severe damage to his lymphatic system and his right foot and ankle are becoming

impaired because they overcompensate for the limitations in his left leg.  *Id.*

## PROCEDURAL HISTORY

On October 1, 2015, Plaintiff submitted a Standard Form 95 Claim for Damage, Injury or

Death to the VA.  That submission was based in part on the factual premise that Nurse

Practitioner McGarrah did not examine Plaintiff's foot during the October 13, 2013,

consultation.  Exhibit E.

On October 16, 2016, Plaintiff commenced this civil action.  ECF No. 1.  On January 17,

2018, after Defendants moved to dismiss, Plaintiff moved for leave to file an amended complaint

to add the United States of America as a Defendant, and attached to the motion a proposed

Amended Complaint for Negligence Resulting in Personal Injuries and Monetary Damages (the

"Amended Complaint").  ECF No. 26, 29.  On February 2, 2018, the Court granted Plaintiff's

motion to amend.

The Amended Complaint alleges that, during the October 30, 2013, medical visit, Nurse

Practitioner McGarrah should have examined his left leg and foot, but did not.  Am. Compl. ¶

29.  Count One asserts that Defendants were negligent because Nurse Practitioner McGarrah

breached the standard of care by not following VA patient protocols by ordering a complete

blood count, and that this was the "sole and proximate cause of the bodily injury sustained by

Plaintiff and the permanent limitations of his limited physical condition."  *Id.* ¶¶ 34, 41.  Count

Two alleges that Defendants failed to "appropriately manage staff while administering quality

care," and that this failure caused Plaintiff's injuries.  *Id.* ¶¶ 43-48.  The Amended Complaint

seeks an award of $1,750,000, based on compensatory damages, including reimbursement of

medical and hotel expenses, lost income and wage-earning capacity, as well as attorneys' fees, costs, and interest.  *Id.* at 9-10.

### PLAINTIFF'S EXPERT AND HIS PROPOSED OPINIONS

On or about January 10, 2018, Plaintiff disclosed Robert Macht, M.D., as his initial medical expert.  The disclosure included a report concluding that Nurse Practitioner McGarrah should have performed a throat culture or a complete blood count lab and then had a follow-up visit with Plaintiff.  Exhibit G at 4.  If she had done so, Dr. Macht opined, "the chances of earlier detection, expeditious treatment and reduced suffering would have been improved for [Plaintiff]" and he would not have had to be treated in Seattle or have existing nerve damage and chronic swelling.  *Id.*  Dr. Macht further opined that had the Nurse Practitioner properly examined and tested Plaintiff, he "would not have had to undergo such extensive treatments and procedures." *Id.* at 5.

After Dr. Macht retired, Plaintiff's counsel retained Dr. Porter.  Dr. Porter is a graduate of Florida State University College of Medicine, from which he completed a baccalaureate program in 2006 and earned a Doctor of Medicine degree in 2010.  *Id.* at 8.  According to his résumé, Dr. Porter is currently employed at four positions:  (1) as a physician at MedStar Health, where he provides home primary care services; (2) as a physician for Doctor on Demand, for which he provides telemedicine care; (3) as a Medical Director for a medical services company, where he oversees the Emergency Medical Services program; and (4) as a physician for MedStar Prompt Care, where he performs outpatient specialty care and "directs or refers to the appropriate modality of care, if needed." *Id.*  With respect to both MedStar jobs, Dr. Porter states that he provides treatment for skin conditions, including "incision and drainage procedures." *Id.*  Dr.

Porter's résumé states that he has certifications and active licenses in 13 states, as well as Basic

Life Support and Advanced Life Support certifications.  *Id.* at 9.

Dr. Porter testified that he was given a file and had questions "as to what Plaintiff's side

of the story was and what his presenting complaint was when he actually went to" the VA

Medical Center.  Porter Depo.[5] at 10.  Dr. Porter believed that the documents referred to only

part of Plaintiff's complaint and he wanted to fill in the gaps.  *Id.* at 10-11.  On August 3, 2018,

Dr. Porter spoke with Plaintiff by telephone.  Exhibit I.  During the conversation, they discussed

his general health, his social history, his past medical history, as well as what happened during

the medical consultation on October 30, 2013.  Porter Depo. at 11-12.  Dr. Porter's notes reflect

that Plaintiff told him that "his foot was not examined at all."  Exhibit I.  After speaking with

Plaintiff, Dr. Porter again reviewed the file before preparing his report.

On August 15, 2018, Dr. Porter signed his expert report, which discloses that he relied on

four categories of documents: notes from the VA Medical Center, Providence Medical Center,

and Harborview Medical Center as well as Plaintiff's post-operative photographs.  Exhibit F at 2.

Under the heading "Basis of Findings," Dr. Porter purported to summarize the relevant facts

based on the treatment notes and his conversation with Plaintiff.  *Id.* at 2-4.  In discussing

Plaintiff's consultation with Nurse Practitioner McGarrah, Dr. Porter stated: "Here it appears that

[she] completed her clinical assessment of [Plaintiff] without evaluation of his lower extremities,

which was part of his presenting complaint."[6]  *Id.* at 3.  Dr. Porter states that Nurse Practitioner

---

[5]  References to "Porter Depo." refer to the transcript of the deposition of Fernando Porter, M.D., taken March 4, 2019.  Relevant excerpts are submitted herewith as Exhibit H.

[6]  Dr. Porter adopted Plaintiff's position that he complained about pain and swelling in his left foot and entered with a cane, even though Nurse Practitioner McGarrah's Progress Notes do not reflect such a complaint.

McGarrah's notes do not mention the swelling in his left foot, that there was "ambulatory

dysfunction," or that Plaintiff walked in with a cane.  *Id.*

> Under the heading "Findings of Negligence," Dr. Porter stated the following:
>
> Based on the documentation from the encounter on October 30, 2013 treatment
> for a dental abscess was given with no mention of his lower extremity.  Standard
> of care for evaluation and treatment of cellulitis at minimum, would have been to
> evaluate the extremity or area of concern with a history and physical exam
> consisting of, but not limited to, the appearance of the skin, observation of fluid
> collection, color and collection of fluid for culture if drainage was present,
> temperature of the skin compared to other areas, sensation and laboratory testing.
> In addition to not practicing within the standard of care there were no follow-up
> instructions given to Mr. Williams . . . .

*Id.* at 5.

Dr. Porter opined that "if NP McGarrah would have performed even some of the

aforementioned exams or test to the lower extremity, or followed up via phone or in person with

[Plaintiff], the chances of earlier detection, treatment, and reduce suffering would have improved

for [Plaintiff].  *Id.* at 6.  He concluded that if the left foot had been properly examined, Plaintiff

"would not have had to undergo life-saving medical treatment that left him with a career-ending

outcome."  *Id.*  Based on this analysis, Dr. Porter found that Nurse Practitioner McGarrah's

alleged departure from the standard of care "is the direct cause of the life-threatening and

continued life altering injuries."  *Id.*  Dr. Porter ended his report by stating that he holds all of his

opinions "with a reasonable degree of medical probability."  *Id.* at 7.

After Dr. Porter's deposition, Plaintiff's counsel produced two documents.  The first was

a four-page "Quick Reference Guide" titled "Medical Documentation Requirements," authored

by TriWest Healthcare Alliance.  Exhibit J.  The second was a recommended guideline by the

Infectious Diseases Society of America titled "Practice Guidelines for the Diagnosis and

Management of Skin and Soft Tissue Infections: 2014 Update by the Infectious Diseases Society

of America."  Exhibit K.

**STANDARDS OF REVIEW**

## I.    LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE

As Plaintiff seeks to offer expert opinion testimony to support his negligence claim, the

analysis begins with Federal Rule of Evidence 702.  The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts
> of the case.

Fed. R. Evid. 702.  This rule "imposes a special obligation on a trial judge to 'ensure that any

and all scientific testimony . . . is not only relevant, but reliable.'"  *Kumho Tire Co. v.

Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509

U.S. 579, 589 (1993)).

Under Rule 702, district courts are gatekeepers of expert evidence.  *See Daubert*, 509

U.S. at 589.  A court must determine as an initial matter whether the proffered witness is

qualified to give the expert opinion he seeks to offer.  *See Kumho Tire*, 526 U.S. at 156; *Daubert*,

509 U.S. at 589.  Then, a court must "ensure that any and all scientific testimony or evidence

admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  "Evidence is relevant if[ ]

it has any tendency to make a fact [of consequence] more or less probable than it would be

without the evidence[.]".  Fed. R. Evid. 401.  When considering the admissibility of scientific

expert testimony, relevance is primarily a question of "fit," and "requires a valid scientific

10

connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591–92.

## II.      MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp.*, 477 U.S. at 327. Indeed, the "very mission" of Rule 56 is "to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) (advisory committee note).

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson*, 477 U.S. 242. A genuine issue of material fact is one that could change the outcome of the litigation. *Id*. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id*. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find an entitlement to relief. "[T]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Potter v. District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) ("[M]erely colorable or not significantly probative evidence . . . is insufficient to defeat a summary judgment motion." (internal quotation marks and citation omitted)).  Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown.  *See, e.g.*, *David v. District of Columbia*, 246 F. Supp. 3d 647 (D.D.C. 2017) (non-moving party's opposition "must consist of more than mere unsupported allegations or denials").

Furthermore, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements."); *Lindsey v. Rice*, 524 F. Supp. 2d 55, 60 (D.D.C. 2007) (granting summary judgment where plaintiff's "self-serving statements [were] too conclusory to survive [defendant's] summary judgment motion").  That is, "conclusory allegations and unsubstantiated speculation do not create genuine issues of material fact." *Bonieskie*, 540 F. Supp. 2d at 195 (citations omitted).

## III.    THE FEDERAL TORT CLAIMS ACT

The law is well-settled that the United States, as a sovereign, may be sued only to the extent that it has consented to suit by statute.  *See Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *United States v. Testan*, 424 U.S. 392, 399 (1976).  A waiver of immunity must be explicit.  *See Honda v. Clark,* 386 U.S. 484, 501 (1967).  The exclusive remedy for common

law tort claims is the FTCA. 28 U.S.C. § 2679(a); *Meyer*, 510 U.S. at 473.  The FTCA authorizes

district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death
> caused by the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment, under
> circumstances where the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b); *see also Cope v. Scott*, 45 F.3d 445, 447 (D.C. Cir. 1995).

Plaintiff filed this action under a negligence theory.  Under the FTCA, negligence cases

such as this one are governed by the law of the state in which the claim arose.  *See* 28 U.S.C. §

1346(b); *Richards v. United States*, 369 U.S. 1, 5-7 (1962).  Hence, the governing law is that for

negligence in the District of Columbia.  To establish negligence, "'a plaintiff must prove a duty

of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage

to the interests of the plaintiff, proximately caused by the breach.'"  *Novak v. Capital Mgmt. &

Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (quoting *District of Columbia v. Beretta, U.S.A.,

Corp.*, 847 A.2d 1127, 1134 n.2 (D.C. 2004)).

In the District of Columbia, the relevant standard of care for Plaintiff's negligence claim

is "a national standard, not just a local custom."  *Nwaneri v. Sandidge*, 931 A.2d 466, 470 (D.C.

2007) (reversing, finding lack of foundation to opine as to national standard).  Moreover, under

D.C. law, a plaintiff must "present expert testimony to establish a relevant standard of care where

the ultimate issues involve[ ] a subject beyond the ken of the average person."  *Haney v. Marriott

Int'l, Inc.*, Civ. A. No. 05-2501 (JDB), 2007 WL 2936087, *3 (D.D.C. Oct. 9, 2007) (quoting

*District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987)).  The "purpose of expert

testimony is to avoid jury findings based on mere conjecture or speculation."  *Washington v.

*Washington Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990).  Thus, "[t]he sufficiency of the

foundation for those opinions should be measured with this purpose in mind."  *Id.*

## MOTION TO PRECLUDE DR. PORTER'S PROPOSED OPINIONS

Challenges to expert testimony are typically resolved in motions *in limine* prior to trial.

However, courts in this district have acknowledged that *Daubert* motions may be appropriate in

the context of summary judgment, particularly when, as here, "defects are obvious on the face of

a proffer."  *See Crowley v. Perdue*, 318 F. Supp. 3d 277, 292 (D.D.C. 2017); *Carmichael v.

West*, Civ. A. No. 12-1969 (BAH), 2015 WL 10568893, at *7 (D.D.C. Aug. 31, 2015) (quoting

*Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("The

*Daubert* regime can play a role during the summary judgment phase of civil litigation.  If

proffered expert testimony fails to cross *Daubert's* threshold for admissibility, a district court

may exclude that evidence from consideration when passing upon a motion for summary

judgment.").  In this case, Dr. Porter's proposed opinions are so plainly inadmissible that they

should be precluded at this stage in the proceedings.

## I.  DR. PORTER IS NOT QUALIFIED AS AN EXPERT BY KNOWLEDGE, SKILL, EXPERIENCE, TRAINING OR EDUCATION.

Dr. Porter is not qualified to render an expert opinion on the topic of the appropriate

standard of care in connection with cellulitis or other skin-related infections.  Dr. Porter has

never been qualified as an expert by any tribunal.  Porter Depo. at 21.  He has not authored any

publications during his nine years as a doctor.  *Id.* at 17.  He is not an urgent care doctor, an

emergency care doctor, an infectious diseases specialist, or a podiatrist.

Dr. Porter has insufficient qualifications and experience to render an expert opinion as to

the nationally applicable standard of care in this case.  Dr. Porter testified that "maybe one

percent" of his practice involves cellulitis, and he declined to "speculate" as to how much of his

practice involved infections of the skin. *Id.* at 25. Dr. Porter testified that he has diagnosed "at least four" patients with necrotizing fasciitis, and did not treat any of them. *Id.* at 26. Rather, he referred those patients to a specialist for treatment because "the direct treatment is beyond the scope of my practice." *Id.*

Dr. Porter may be qualified to provide home primary care services and telemedicine care, but there can be no dispute that Dr. Porter is not a specialist in the field of diagnosing and treating skin infections such as cellulitis, particularly since such a miniscule portion of his practice involves that condition. Further, he has authored no publications on cellulitis, skin infections, or (any other topic) and holds no positions that would suggest that he has the specialized knowledge or experience to speak to standards of care, let alone nationally applicable standards of care. Dr. Porter's testimony should be excluded under Rule 702 because he is not qualified.

## II. DR. PORTER'S TESTIMONY WILL NOT ASSIST THE TRIER OF FACT TO UNDERSTAND THE EVIDENCE OR TO DETERMINE A FACT IN ISSUE.

Under Plaintiff's version of events in this negligence case, Plaintiff entered the VA Medical Center complaining of pain and swelling in his neck and jaw as well as stiffness, swelling, and "reddishness" in his left foot. Plaintiff has the burden to establish a nationally recognized standard of care and that Defendants breached that standard. Dr. Porter, however, has proposed a standard of care for the treatment of *cellulitis*, which is off the mark because there is no evidence that Plaintiff had cellulitis on October 30, 2013. Even if Plaintiff did suffer from cellulitis on that day, Dr. Porter's proposed standard is inadmissible because it not a nationally recognized standard, but rather his own personal view of what the treatment for cellulitis should have been. For these reasons, Dr. Porter's opinions will not assist the trier of fact to understand the evidence or determine a fact in issue.

15

### A.      The National Standard of Care in the District of Columbia

Generally, the applicable standard of care for all health care professionals is the "course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances." *Strickland v. Pinder*, 899 A.2d 770, 773 (D.C. 2006) (quoting *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984)); *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979) (stating that the standard is "that degree of reasonable care and skill expected of members of the medical profession under the same or similar circumstances"). The D.C. Circuit has noted that, under D.C. law, expert testimony on standard of care:

> is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances. Nor is it enough for the expert simply to declare that the [defendant] violated the national standard of care. Rather, the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured. Thus the expert must clearly relate the standard of care to the practices in fact generally followed by other comparable ... facilities or to some standard nationally recognized by such units.

*Briggs v. Wash. Metro Area Transit Auth.*, 481 F.3d 839, 846 (D.C. Cir. 2007) (emphasis and alterations in original) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)). Accordingly, "generalized references to standards [are] insufficient" and "[t]he expert must proffer a specific, articulable (and articulated) standard of care." *Id.* (internal quotation marks omitted).

### B.      Dr. Porter Identified the Wrong Standard of Care.

In this case, the undisputed facts are that Plaintiff complained about pain and swelling in his neck and jaw and also about stiffness and swelling in his left foot. Nurse Practitioner McGarrah's notes reveal that Plaintiff's mouth was "unremarkable" and that his thyroid had "puffiness." Exhibit C at 60. She also briefly examined Plaintiff's foot, which Plaintiff described as "stiff, swollen, a little bit of reddish tint." Pl. Depo at 32. Plaintiff's claim of medical malpractice must establish a standard of care that was appropriate for these

circumstances.  In this case, the standard of care must involve the appropriate treatment for a patient with a puffy thyroid and a swollen left foot.

Yet, Dr. Porter's expert opinions are based on a standard of care for cellulitis.  This is misplaced.  There is no evidence that Plaintiff suffered from this more advanced skin infection when he showed up at the VA Medical Center on October 30, 2013.  A complaint of stiffness, swelling and skin with "a little bit of reddish tint" does not necessarily mean that Plaintiff had, or would have, cellulitis in his left foot.  Dr. Porter, therefore, has grounded his proposed standard of care on a condition that was not apparent when Nurse Practitioner McGarrah examined him.[7] Because the standard of care that Dr. Porter has proposed is unsupported by any evidence, his proffered testimony will not assist the Court to determine any fact in issue.

> ### C.       Dr. Porter Has Not Identified a Nationally Applicable Standard of Care.

As referenced above, the relevant standard of care in the District of Columbia is a national standard of care.  As such, "the plaintiff's experts must do more than offer personal opinions as to how they would act in a particular circumstance."  *Nwaneri*, 931 A.2d at 470 (citing *Strickland*, 899 A.2d at 773 (affirming defendant judgment based on lack of evidence of national standard of care).  Moreover, "it is insufficient for an expert's standard of care testimony to merely recite the words 'national standard of care.'"  *Strickland*, 899 A.2d at 773. An expert's opinion as to a national standard of care is sufficient only when that expert establishes that a particular course "is followed nationally either through reference to a published

---

[7] Dr. Porter's approach to the standard of care was markedly different from the approach that Plaintiff had taken from the outset of his case.  In the Complaint and the Amended Complaint, Plaintiff referenced unspecified "VA patient protocols" that ¨mandate" that "he should have had a complete blood count lab assessment and an ultrasound of his swollen thyroid."  Compl. ¶ 28; Am. Compl. ¶ 28.  In addition, Dr. Macht prepared a report based on the standard of care for treating a patient with swelling in the jaw.  Exhibit G at 4.

standard, discussion of the described [standard] with practitioners outside the District at seminars or conventions, or through presentation of relevant data." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 328 (D.C. 2007) (affirming defendant judgment based on lack of foundation to opine as to national standard); *Nwaneri*, 931 A.2d at 470 (same) (quoting *Strickland*, 899 A.2d 773-74).

Moreover, "generalized references to standards are insufficient, rather the expert must proffer a specific, articulable (and articulated) standard of care, and must relate those standards directly to the defendant's conduct." *Frazza v. United States*, 529 F. Supp. 2d 61, 72 (D.D.C. 2008) (quoting *Briggs*, 481 F.3d at 846-47) (internal quotation and correction marks omitted). Further, "articulation of a specific standard is essential especially in circumstances in which the defendant is alleged to have failed to protect the plaintiff from harm." *Frazza*, 529 F. Supp. 2d at 72 (quoting *Briggs*, 481 F.3d at 847) (internal quotation and correction marks omitted). Based on the record in this case, it is clear that Plaintiff has not established a national standard of care.

Even if Dr. Porter could somehow establish that the relevant standard of care in this case is one for the treatment of cellulitis, he has not identified a nationally applicable standard. Indeed, his report and deposition testimony reveal that his opinion of that standard of care is nothing more than his own personal opinion based on his relatively minimal knowledge and experience, and not based on or made in reference to any particular publications, guidelines or other authoritative sources. Dr. Porter's report demonstrates that he did not review or rely on *any* publications, reference materials or other sources that establish the applicable national standard of care. Exhibit F at 2. Yet, Dr. Porter goes on to opine that Defendants' supposed departure from this contrived standard of care for cellulitis "is the direct cause of the life-

threatening and continued life altering injuries suffered by [Plaintiff]." *Id.* at 6.  This is precisely

the type of testimony that District of Columbia law considers inadequate as a matter of law.

Defendants expect that Plaintiff may argue that the national standard of care is supported

by the two documents that Dr. Porter produced after his deposition.  However, neither of these

materials support his proposed opinions.  The undated document titled "Medical Documentation

Requirements" relates to how providers should submit medical documentation to the VA, and is

plainly irrelevant to the issues in this case.  Further, the Infectious Diseases Society of America's

recommended practice guidelines were prepared in 2014.  Because this case involves the

standard of care during Plaintiff's visit to the VA Medical Center in October 2013, these

recommended practice guidelines also are irrelevant.  Dr. Porter has not come close to

identifying any nationally applicable standard of care that Defendants supposedly breached.

In sum, nowhere does Plaintiff's expert opine as to the existence of a nationally

recognized standard of care for the treatment of a patient whose chief complaint was "pain and

swelling of neck and jaw from infected tooth rt. lower molar" or who also complained of pain,

swelling and a reddish tint in his left foot.  Nor has Dr. Porter opined about the contours of that

standard and what Defendants were purportedly required to do to comply with it.

## III.    DR. PORTER'S PROPOSED TESTIMONY DOES NOT SATISFY THE REMAINING REQUIREMENTS OF RULE 702.

### A.    Dr. Porter's Testimony Is Based upon Insufficient Facts or Data.

Further, Dr. Porter's proposed standard of care is misplaced because it is based on

erroneous information – provided by Plaintiff himself.  During his phone call with Dr. Porter,

Plaintiff asserted that nobody had examined his left foot on October 30, 2013.  That statement

was consistent with prior representations that Plaintiff had made.  In his Standard Form 95, for

example, Plaintiff represented that the foot had not been examined.  Exhibit E at 3 ("the NP

should have . . . examined [Plaintiff's] left leg and foot . . . .  None of this occurred.").  Plaintiff responded to interrogatories the same way: he purported to fully describe his medical visit but did not mention that Nurse Practitioner McGarrah examined his left foot.  Exhibit A at 9 (response to interrogatory No. 14).

The facts shifted at Plaintiff's deposition.  Plaintiff testified that not only did Nurse Practitioner McGarrah examine his left foot, but the nurse who initially attended him and took his vital signs also may have examined the foot.  Pl. Depo at 34-35.  Plaintiff did not remember what Nurse Practitioner McGarrah said after her examination.  *Id.* at 44-45.  Dr. Porter based his expert opinion on his telephone call with Plaintiff, not on the sworn deposition testimony that significantly altered the evidentiary landscape.  Indeed, Dr. Porter seems to have tried to exploit the absence of documentation regarding the foot to advance the concept that Plaintiff had cellulitis on October 30, 2013.  Not even Plaintiff testified that he had cellulitis.  Dr. Porter's unwarranted assumption that Plaintiff suffered from that condition renders his entire proposed testimony completely useless.

### B.      Dr. Porter's Testimony Is Not Based on Reliable Principles and Methods.

There is no evidence that Dr. Porter based his expert opinions on any methodology, much less "reliable principles and methods."  To the contrary, Dr. Porter simply announces in his report what he believes the standard of care should be, without explaining why.  Exhibit F at 5-6.  Dr. Porter goes on to opine that Nurse Practitioner McGarrah "is the direct cause" of Plaintiff's "continued life altering injuries" because she did not examine his left foot on October 30, 2019, which Dr. Porter erroneously claims had cellulitis on that date.  *Id.* at 6.

Dr. Porter has not disclosed any relevant medical literature or other sources that form the basis for his expert opinions.  Nor does he identify the principles and methods that he relied upon

to reach the conclusions that he expressed in his expert report.  Even if Dr. Porter intends to rely

exclusively on his scant experience regarding cellulitis, he has failed to "'explain how that

experience leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reasonably applied to the facts.'"  *Heller v. District of

Columbia*, 801 F.3d 264, 272 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 702 Advisory Committee

Note).

*          *          *

For the foregoing reasons, Dr. Porter's proposed opinion testimony does not satisfy any

of the requirements for admissibility under Rule 702.  Dr. Porter is not qualified to offer an

opinion regarding the standard of care, his proposed opinions are not reliable and will not assist

the Court, and his proposed testimony is based on incomplete and erroneous facts and does not

reflect a methodology based on reliable principles.

**MOTION FOR SUMMARY JUDGMENT**

Because Dr. Porter's testimony is inadmissible, Plaintiffs are unable to satisfy their

burden to establish a nationally applicable standard of care and that Defendants breached that

standard.  Even if the Court were to conclude that Dr. Porter's testimony satisfied the

requirements of Rule 702, Defendants are entitled to summary judgment because they did not

breach the standard of care for which Dr. Porter has advocated.  Dr. Porter's sole opinion is that

Nurse Practitioner McGarrah should have examined Plaintiff's left foot during the October 30,

2013, consultation, and the undisputed facts are that she did exactly that.

**I.     WITHOUT EXPERT TESTIMONY REGARDING THE APPLICABLE
         STANDARD OF CARE, PLAINTIFF CANNOT SATISFY THE ELEMENTS OF
         A FTCA CLAIM.**

In a FTCA claim, the plaintiff must prove three elements: (1) a duty of care owed by the

defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) and damage to the

21

interests of the plaintiff, proximately caused by the breach.  *See Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.2d 902, 907 (D.C. Cir. 2006).  Because Dr. Porter's testimony is inadmissible, and Plaintiff disclosed no other medical experts who can offer evidence regarding the first two elements of the claim, Plaintiff cannot meet his burden to establish negligence.  Accordingly, the Court must grant summary judgment in favor of Defendants.

## II.     EVEN IF DR. PORTER'S OPINIONS ARE ADMISSIBLE, DEFENDANTS DID NOT BREACH THE STANDARD OF CARE AS A MATTER OF LAW.

Assuming that the Court concludes that Dr. Porter has satisfied the requirements of Rule 702, Defendants are entitled to summary judgment because Plaintiff cannot prove that they breached the standard of care that Dr. Porter has advocated.  The undisputed facts are that Nurse Practitioner McGarrah did, in fact, examine Plaintiff's swollen foot, which is exactly what Dr. Porter says she should have done.

Dr. Porter's opinion is that the standard of care for evaluation and treatment of cellulitis at a minimum,

> would have been to *evaluate the extremity or area of concern* with a history and physical exam consisting of, but not limited to, the appearance of the skin, observation of fluid collection, color and collection of fluid for culture if drainage was present, temperature of the skin compared to other areas, sensation and laboratory testing.

Exhibit F at 5 (emphasis added).

According to Plaintiff's sworn deposition testimony, Plaintiff told the first nurse that he had problems walking and swallowing and that his foot was swollen.  Pl.'s Depo. at 34.  That nurse may have looked at his foot, but Plaintiff cannot remember whether he took off his shoes and socks at that time.  *Id.* at 34-35.  Plaintiff then was seen by Nurse Practitioner McGarrah.

> A     I told her I had a problem swallowing, told her my foot was swollen, that I didn't feel well, and that my right arm was actually getting stiff, and my neck was swollen.  And that was also added to my foot being swollen.

Q        Can you repeat that last thing you said?

A        And that was also in addition to my foot being swollen[.]

Q        Yeah.  Okay.  And after you mentioned this to the nurse
         practitioner, what did she do?

A        *She took a look at my foot.*  She also reached forward and touched
         my neck, my glands in my neck area, right here.

                          *          *          *

Q        Okay.  Did you take both shoes and socks off, on both feet or only
         your left foot?  Do you recall?

A        I don't remember if I took the right one off, but I know I took the
         left one off.

Pl. Depo. at 35-36, 38 (emphasis added).

        Based on Plaintiff's deposition testimony, there is no dispute that Nurse Practitioner

McGarrah evaluated the left foot.  There is no evidence that the foot had blisters or visible fluid,

and so there would be no reason for Ms. McGarrah to collect or drain fluid for a culture.

Plaintiff described the foot as stiff, swollen, and "reddish," so Nurse Practitioner McGarrah did

exactly what Plaintiff testified that she did:  examine the foot.

        If there was any doubt that Nurse Practitioner McGarrah satisfied the standard of care

proposed by Dr. Porter, the expert himself confirmed it at his deposition:

Q        What's going on with the foot that needs to be addressed in your
         view?

A        Just to look at it, examine it.  I'm not saying that – I'm not saying
         that she – I'm not saying that she would have been able to directly
         address the issue, or excuse me, I'm not saying that she would
         have been able to do surgery if that were needed, but just examine
         it would have --

Q        You mean you wanted the nurse practitioner to have the Plaintiff
         take off his shoes and socks and have her look at it?

A        *Yes.*

Porter Depo. at 78-79 (emphasis added).

And, according to Plaintiff, that is what Nurse Practitioner McGarrah did.  Because the

undisputed facts demonstrate that Ms. McGarrah examined Plaintiff's foot, Plaintiff cannot

establish that Defendants breached even the standard of care for cellulitis that Dr. Porter is

advocating.  The Court should grant summary judgment in Defendants' favor.

## III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM BASED ON NEGLIGENT SUPERVISION.

Because Defendants are entitled to summary judgment with respect to Plaintiff's

negligence claim, Plaintiffs claim of negligent supervision necessarily must fail.

The cause of action for negligent supervision recognizes that an employer owes specific

duties to third persons based on the conduct of its employees.  *Griffin v. Acacia Life Ins. Co.*, 925

A.2d 564, 575 (D.C. 2007).  As in any negligence action, a plaintiff seeking to

establish negligent supervision "bears the burden of presenting evidence 'which establishes the

applicable standard of care, demonstrates that this standard has been violated, and develops a

causal relationship between the violation and the harm complained of.'"  *Morrison v.*

*MacNamara*, 407 A.2d 555, 560 (D.C. 1979) (quoting *Kosberg v. Washington Hosp. Ctr.*,

*Inc.*, 394 F.2d 947, 949 (D.C. Cir. 1968)).  Therefore, because Plaintiff cannot establish the

applicable standard of care or demonstrate that Defendant breached that standard of care, the

negligent supervision claim must be dismissed.

In addition, liability for negligent supervision arises when an "employer knew or should

have known its employee behaved in a dangerous or otherwise incompetent manner, and that the

employer, armed with that actual or constructive knowledge, failed to adequately supervise the

employee."  *Godfrey v. Iverson*, 559 F.3d 569, 571 (D.C. Cir. 2009) (quoting *Brown v.*

*Argenbright Sec., Inc.,* 782 A.2d 752, 760 (D.C. 2001) (internal quotation marks and citation

omitted)).  There is no evidence that Defendant had actual or constructive knowledge that any

employee behaved in a dangerous or incompetent manner, or failed to adequately supervise any

employee.

Because Plaintiff has not and cannot offer proof to support a claim for negligent

supervision, Defendants are entitled to summary judgment with respect to Count Two of the

Amended Complaint.

**CONCLUSION**

For the reasons set forth above, the Court should grant this motion, hold that Dr. Porter's

expert opinions are inadmissible, and grant summary judgment in favor of Defendants as to both

of Plaintiff's claims in the Amended Complaint.

Dated:  July 24, 2019

Respectfully submitted,

JESSIE K. LIU, D.C. BAR #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

_____/s/ *Paul Cirino*_____
PAUL CIRINO
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Phone:  (202) 252-2529
Facsimile:  (202) 252-2599
paul.cirino@usdoj.gov

*Attorneys for Defendants*