**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAMOND LEE WILLIAMS,

             Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, *et al.*,

             Defendants.

No. 16-cv-2062 (EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Damon Lee Williams ("Mr. Williams"), a veteran of the United States Air Force, brings this medical malpractice action against the United States Department of Veterans Affairs ("VA") and the United States of America (collectively, the "Defendants") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), arising from his treatment at the Veterans Affairs Medical Center ("VAMC") in Washington, D.C. *See generally* First Am. Compl. ("FAC"), ECF No. 48.[1] In October 2013, Mr. Williams arrived at the VAMC with swelling in his left foot, throat, and jaw. Asserting that the VAMC staff failed to properly treat his left foot, Mr. Williams contends that the VAMC staff acted negligently, and that they were negligently

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

supervised in treating his left foot.

The Defendants move for summary judgment and the preclusion of Mr. Williams' proposed expert opinions. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court concludes that additional discovery is warranted to allow Mr. Williams to demonstrate an essential element of his FTCA claims—the applicable standard of care—based on expert testimony. Because the Court has not set a trial date in this case, the Court will exercise its discretion to re-open discovery for the limited purpose of permitting Mr. Williams to either file a supplemental expert report or retain a new expert witness to present expert testimony concerning the applicable standard of care. Therefore, the Court **GRANTS** Mr. Williams' request for leave to amend his expert opinions or disclose a new expert, and **DENIES WITHOUT PREJUDICE** Defendants' Motion to Preclude Expert Opinions and for Summary Judgment.

## I.   Background

Mr. Williams served as an aircraft fuel maintenance engineer in the Air Force until he was honorably discharged in 1997. Defs.' Ex. E, ECF No. 44-2 at 47-48.[2] After working for an

---

[2] The material facts—drawn from the parties' submissions—are undisputed, unless otherwise indicated. *See, e.g.*, Defs.' Statement of Material Facts Not in Dispute ("Defs.' SOMF"), ECF No. 44-3 at 1-2; Pl.'s Resp. to Defs.' SOMF & Pl.'s Statement of

aerospace company on Andrews Air Force Base, Mr. Williams eventually became an independent, personal physical fitness trainer. Defs.' Ex. A, ECF No. 44-2 at 10. On October 20, 2013, Mr. Williams participated in an athletic event, "Tough Mudder," which involved completing an obstacle course by "[c]limbing rope, pulling stones, carrying logs, running up hills, running down hills, pulling sleds, [and] climbing walls." Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 18.

During the competition, a pebble entered Mr. Williams' shoe, causing a scrape to his left foot. *Id*. at 19. After cleaning it, Mr. Williams applied a bandage to his left foot to stop the bleeding. *Id.* A few days later, Mr. Williams experienced "stiffness" and "swelling" in his left foot, making it difficult for him to walk. *Id*. at 20. On October 29, 2013, Mr. Williams called the VAMC's Advice Line, complaining about an "infection in [his] right lower molar" and "swelling and pain in [his] right jaw and [the] back of [his] throat." Defs.' Ex. C, ECF No. 44-2 at 37.

### A. Mr. Williams Visits the VAMC

The next day, on October 30, 2013, Mr. Williams arrived at the VAMC without an appointment, using a cane and complaining about, *inter alia*, his left foot that was "stiff" and "swollen"

---

Genuine Issues ("Pl.'s SOMF"), ECF No. 46-2 at 1-3; Defs.' Reply to Pl.'s SOMF, ECF No. 47-1 at 1-2.

with a "reddish tint." Pl.'s SOMF, ECF No. 46-2 at 1 ¶ 1; *see also* Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 21-22. First, a nurse, Arleen Gray ("Ms. Gray"), took Mr. Williams' temperature, Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 23-24, noting that the "Chief Complaint" of Mr. Williams was "pain and swelling of [the] neck and jaw from [an] infected tooth [in the] r[igh]t lower molar [for the past] 4 days," Defs.' Ex. C, ECF No. 44-2 at 34-35.

Next, a nurse practitioner, Marguerite McGarrah ("NP McGarrah"), checked Mr. Williams' glands and looked at his left foot. Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 25 ("[NP McGarrah] took a look at my foot. She also reached forward and touched my neck, my glands in my neck area, right here.").[3] As NP McGarrah observed him, Mr. Williams removed his left shoe and sock. Pl.'s SOMF, ECF No. 46-2 at 2 ¶ 3; *see also* Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 26 ("I know I took the left [shoe and sock] off."). Mr. Williams did not request any tests of his left foot. Pl.'s Dep. Tr., Defs.' Ex. B, ECF No. 44-2 at 28.

NP McGarrah's medical notes from the October 30, 2013 visit

---

[3] The parties dispute whether NP McGarrah "examined" Mr. Williams' left foot. *Compare* Pl.'s SOMF, ECF No. 46-2 at 2 ¶ 4 ("A mere look with no documentation or clinical advisements does not constitute an examination."), *with* Defs.' Reply to Pl.'s SOMF, ECF No. 47-1 at 2 ¶ 7 ("[Mr. Williams] testified under oath that [NP] McGarrah examined his left foot.").

do not reflect her examination of his left foot or lower
extremity. Defs.' Reply to Pl.'s SOMF, ECF No. 47-1 at 2 ¶ 8.
NP McGarrah, however, noted that the "Clinical Observation"
involved an examination of Mr. Williams' mouth, noting "slight
swelling [on the] r[igh]t side of [his] jaw." Defs.' Ex. C, ECF
No. 44-2 at 35. NP McGarrah also noted that Mr. Williams' mouth
was "unremarkable," the "thyroid feels puffy," and there was
"puffiness" on the right side of his neck that "extends around
to [the] thyroid." *Id*. at 36. NP McGarrah prescribed
Mr. Williams with Penicillin VK with "some misgivings, in light
of past h[istory] and concern for antib[iotic] resistance." *Id*.
at 37.

### B. Mr. Williams Receives Follow-Up Medical Treatment

A few days after the October 30, 2013 visit, Mr. Williams
boarded a plane to Seattle, Washington. Pl.'s Dep. Tr., Defs.'
Ex. B, ECF No. 44-2 at 30. At that point, Mr. Williams was
"[s]till feeling bad"; there was "[n]ot really much
improvement"; and "[t]he swelling seemed to still be there." *Id*.
In November 2013, Mr. Williams received follow-up medical
treatment at two different medical centers in the State of
Washington. *Id*. at 31-32. On November 3, 2013, Mr. Williams'
chief complaints were "Foot Swelling" and "Dental Pain" during
his visit at the first medical center. Pl.'s Ex. B, ECF No. 46-4
at 13 ("The patient notes that on Tuesday he developed a red

area with blister to the dorsum of his left foot which has gradually expanded to involve his entire lower extremity up to the knee with some erythema extending up the left thigh."). The physicians advised him that surgery might be necessary. Pl.'s Ex. G, ECF No. 44-6 at 68.

On the same day, Mr. Williams was transferred to the second medical center. *Id*. There, Mr. Williams was diagnosed with "Left leg cellulitis" and "NECROTIZING FASCIITIS" on November 4, 2013. Defs.' Ex. D, ECF No. 44-2 at 40.[4] Under the "Physical Exam" section in the doctor's notes, it contains the following "Musculoskeletal" description:

> left lower leg with erythema, bullae below the knee to the foot, leg is swollen and edematous compared to right, popped blisters contained clear yellowish/orange fluid, leg superior to knee is normal in caliber, leg is nontender, normal sensation, ROM is limited by swelling but able to move toes and foot at the ankle.

*Id*. at 41. Mr. Williams underwent emergency surgery for his skin-related infections, and he spent approximately ten days in the hospital. Pl.'s Dep. Tr., Pl.'s Ex. I, ECF No. 46-4 at 156.

---

[4] Cellulitis is a skin infection. Defs.' Ex. K, ECF No. 44-2 at 103 ("'Cellulitis' and 'erysipelas' refer to diffuse, superficial, spreading skin infections."); Pl.'s Ex. H, ECF No. 46-4 at 102 (same). Necrotizing fasciitis is a flesh-eating infection. *E.g.*, Lois Shepherd, *The End of End-of-Life Law*, 92 N.C. L. Rev. 1693, 1736 (2014); Defs.' Ex. K, ECF No. 44-2 at 107 ("Necrotizing fasciitis is an aggressive subcutaneous infection that tracks along the superficial fascia, which comprises all the tissue between the skin and underlying muscles."); Pl.'s Ex. H, ECF No. 46-4 at 106 (same).

After his condition improved, Mr. Williams was discharged from the second medical center on or about November 14, 2013. *Id.*

### C. Procedural History

Based on these events, Mr. Williams submitted an administrative claim—the Standard Form 95—to the VA's Office of Regional Counsel in October 2015, FAC, ECF No. 48 at 2 ¶ 7, claiming that NP McGarrah negligently "failed to screen or test for the bacterial infection" during his October 30, 2013 visit to the VAMC, Defs.' Ex. E, ECF No. 44-2 at 45 (Claim for Damage, Injury, or Death). On October 16, 2016, Mr. Williams filed the instant action against the VA. *See generally* Compl., ECF No. 1. On February 2, 2018, the Court granted over the VA's objection Mr. Williams' motion to file an amended complaint to add the United States of America as a defendant. Min. Entry of Feb. 2, 2018. Mr. Williams asserts two counts against the Defendants under the FTCA: (1) negligence ("Count I"), FAC, ECF No. 48 at 3 ¶¶ 17-19, 4 ¶¶ 20-26, 5 ¶¶ 27-32, 6 ¶¶ 33-38, 7 ¶¶ 39-41; and (2) negligent supervision ("Count II"), *id.* at 7 ¶¶ 42-45, 8 ¶¶ 46-48. Mr. Williams seeks, among other things, an award of $1,750,000.00. *Id.* at 10.

After the close of discovery on March 13, 2019, Min. Order of Jan. 31, 2019, the Defendants moved for summary judgment and the preclusion of Mr. Williams' proposed medical expert opinions, *see, e.g.*, Defs.' Mot. to Preclude Expert Op. & For

Summ. J. ("Defs.' Mot."), ECF No. 44 at 1-2; Defs.' Mem. of Law
in Supp. of Defs.' Mot. ("Defs.' Mem."), ECF No. 44-1 at 1-31.
Mr. Williams filed his opposition brief, *see* Pl.'s Opp'n, ECF
No. 46 at 1-2; *see also* Pl.'s Mem. of Law in Opp'n to Defs.'
Mot. ("Pl.'s Mem."), ECF No. 46-1 at 1-30, and the Defendants
filed their reply brief, *see* Defs.' Reply, ECF No. 47 at 1-14.
The motion is ripe and ready for the Court's adjudication.

## II.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, "[t]he
court shall grant summary judgment if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). The moving party must identify "those portions of the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, which
it believes demonstrate the absence of a genuine issue of
material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986) (internal quotation marks omitted). To defeat summary
judgment, the nonmoving party must demonstrate that there is a
genuine issue of material fact. *Id.* at 324. A material fact is
one that is capable of affecting the outcome of the litigation.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A
genuine dispute is one where "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."

*Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## III. Analysis

In moving for summary judgment, the Defendants advance three primary arguments. First, Mr. Williams cannot meet his burden of proving his FTCA claims based on two separate theories—negligence and negligent supervision—because he fails to satisfy his burden of establishing a nationally applicable standard of care through his proffered expert testimony. Defs.' Mem., ECF No. 44-1 at 27-28. Next, Mr. Williams fails to demonstrate that the Defendants breached the standard of care for cellulitis because NP McGarrah examined Mr. Williams' left foot. *Id.* at 28-30. Finally, Mr. Williams' negligent supervision claim fails because he cannot establish the applicable standard of care, demonstrate that the Defendants breached that standard of care, and that the Defendants had actual or constructive knowledge. *Id.* at 30-31. The Defendants move to preclude Mr. Williams' expert opinions on the grounds that the proffered testimony of his expert witness, Fernando A. Porter, M.D. ("Dr. Porter"), is inadmissible under Federal Rule of Evidence 702. *Id.* at 20-27.

Mr. Williams, in contrast, argues that summary judgment is inappropriate because there are genuine issues of material fact—

namely, whether NP McGarrah properly assessed, treated, and evaluated him, whether NP McGarrah performed a clinical exam on his left foot, whether NP McGarrah deviated from the applicable standard of care, and whether NP McGarrah improperly provided care without supervision. Pl.'s Mem., ECF No. 46-1 at 27-29. Mr. Williams contends that Dr. Porter is qualified to serve as an expert, his expert testimony will assist the trier of fact, his proffered testimony satisfies Rule 702's requirements, and his expert opinions are based on reliable principles and methods. *Id*. at 22-26. Alternatively, Mr. Williams urges this Court to grant him leave to either amend Dr. Porter's proffered expert opinions or substitute a different medical expert. *Id*. at 29.

The Court first articulates the applicable legal standards in this case, and then addresses the parties' arguments, concluding that additional, limited expert discovery as to the applicable standard of care is warranted. The Defendants may renew their motion for summary judgment and challenges to Mr. Williams' medical expert after the close of limited expert discovery.

### A. Negligence Claims Under the Federal Tort Claims Act

Mr. Williams asserts claims under the FTCA. *See* 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2671 *et seq*. The FTCA contains a limited waiver of sovereign immunity that allows the United

States to be sued for the negligent acts or omissions of its employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1).[5] Under the FTCA, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (collecting cases). Accordingly, "[a] federal district court addressing an FTCA action must apply the law of the state, presumably in this case the District of Columbia, in which the alleged tortious conduct occurred." *Hansen v. Lappin*, 800 F. Supp. 2d 76, 81 (D.D.C. 2011) (footnote omitted).

Here, the parties agree that the law of the District of Columbia applies in this case because the alleged tortious acts occurred in the District. *See, e.g.*, Defs.' Mem., ECF No. 44-1

---

[5] Section 1346(b)(1), in relevant part, provides:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

at 19-20; Pl.'s Mem., ECF No. 46-1 at 22. Under District of
Columbia law, "[i]n a negligence action predicated on medical
malpractice, the plaintiff must carry a tripartite burden, and
establish: (1) the applicable standard of care; (2) a deviation
from that standard by the defendant; and (3) a causal
relationship between that deviation and the plaintiff's injury."
*Washington v. Wash. Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990)
(citations omitted). "Expert testimony is required to prove all
three of the required elements, including causation, except
where the proof is so obvious as to lie within the ken of the
average lay juror." *Providence Hosp., Inc. v. Willis*, 103 A.3d
533, 538–39 (D.C. 2014).

"In the District of Columbia, the applicable standard of
care in a medical malpractice action is 'a national standard,
not just a local custom.'" *Nwaneri v. Sandidge*, 931 A.2d 466,
470 (D.C. 2007) (quoting *Travers v. District of Columbia*, 672
A.2d 566, 568 (D.C. 1996)). And "the testifying expert must
establish that the relevant standard of care is followed
nationally, 'either through reference to a published standard,
discussion of the described course of treatment with
practitioners outside the District at seminars or conventions,
or through presentation of relevant data.'" *Porter v. McHugh*,
850 F. Supp. 2d 264, 268 (D.D.C. 2012) (quoting *Strickland v.
Pinder*, 899 A.2d 770, 773-74 (D.C. 2006)). In general, "the

applicable standard of care for all health care professionals

and facilities is the 'course of action that a reasonably

prudent doctor with the defendant's specialty would have taken

under the same or similar circumstances.'" *Bederson v. United

States*, 935 F. Supp. 2d 48, 74 (D.D.C. 2013) (quoting

*Strickland*, 899 A.2d at 773); *see also Travers*, 672 A.2d at 568

("The personal opinion of the testifying expert as to what he or

she would do in a particular case . . . is insufficient to prove

the applicable standard of care.").

## B. Challenges to Dr. Porter as an Expert Witness

Before reaching the merits, the Court turns to the

Defendants' challenge to Dr. Porter's qualifications as a

medical expert witness and the methodology forming his expert

opinions. *See* Defs.' Mem., ECF No. 44-1 at 20-27; *see also* Pl.'s

Mem., ECF No. 46-1 at 22-23. Federal Rule of Evidence 702

provides:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an
> opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized
> knowledge will help the trier of fact to
> understand the evidence or to determine a fact
> in issue; (b) the testimony is based on
> sufficient facts or data; (c) the testimony is
> the product of reliable principles and
> methods; and (d) the expert has reliably
> applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702. Under Rule 702, trial judges serve as

gatekeepers to ensure that the methodology underlying the expert testimony is valid and the expert's conclusion is based on "good grounds." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Haarhuis v. Kunnan Enters., Ltd.*, 177 F.3d 1007, 1015 (D.C. Cir. 1999) ("[T]he decision whether to qualify an expert witness is within the broad latitude of the trial court and is reviewed for abuse of discretion.").

A party may raise challenges to experts in pre-trial motions, which are commonly referred to as "*Daubert* motions" based on the Supreme Court's decision on the admissibility of expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[6] Given that the trial court has the discretion "to decide whether or when special briefing or other proceedings are needed to investigate reliability," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Court may hold a *Daubert* hearing, *United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 52 (D.D.C. 2013), *aff'd*, 901 F.3d 326 (D.C. Cir. 2018).

Here, it is undisputed that Dr. Porter graduated from Florida State University College of Medicine, is licensed to practice medicine in twelve states and the District of Columbia,

---

[6] "Under *Daubert*, the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1126 (D.C. Cir. 2001) (quoting *Daubert*, 509 U.S. at 592).

and is a physician at Medstar Health, Doctor on Demand, and
Medstar Prompt Care. Pl.'s Ex. C, ECF No. 46-4 at 34-35. It is
uncontested that Dr. Porter serves as the Medical Director of
Life Ambulance. *Id.* at 34. The Defendants, however, contend that
Dr. Porter is unqualified on four grounds: (1) "[he] is not
qualified to render an expert opinion on the topic of the
appropriate standard of care in connection with cellulitis or
other skin-related infections," Defs.' Mem., ECF No. 44-1 at 20,
given that "there is no evidence that [Mr. Williams] had cellulitis
on October 30, 2013," *id.* at 21; (2) "[he] has never been
qualified as an expert by any tribunal," *id.* at 20; (3) "[h]e
has not authored any publications during his nine years as a
doctor," *id.*; and (4) "[h]e is not an urgent care doctor, an
emergency care doctor, an infectious diseases specialist, or a
podiatrist," *id.*

Mr. Williams disagrees, arguing that Dr. Porter is
qualified because: (1) he has served in "urgent care and primary
care roles," *id.*; and (2) he has "provided care for over twenty
thousand . . . patients." Pl.'s Mem., ECF No. 46-1 at 22.
Mr. Williams goes on to argue that:

> Dr. Porter's educational credentials,
> licensure in twelve . . . states and the
> District of Columbia, volume of practice,
> management experience, and administrative
> policy experience qualify him to articulate
> the appropriate level of care that should be
> provided in the urgent and primary care

> settings and conversely affords him the
> ability to outline the clinical failings of
> Defendants, specifically NP McGarrah.

*Id.* at 23. Mr. Williams points out that Dr. Porter testified in his deposition that "he has diagnosed cellulitis too many times to count." *Id.* But the Defendants argue that Dr. Porter testified that "cellulitis was a minuscule portion of his home care and telemedicine practice." Defs.' Reply, ECF No. 47 at 9.

Here, the Defendants acknowledge that "[c]hallenges to expert testimony are typically resolved in motions *in limine* prior to trial." Defs.' Mem., ECF No. 44-1 at 20. Nonetheless, the Defendants cite two cases in this District to support the proposition that "*Daubert* motions may be appropriate in the context of summary judgment." *Id.* (citing *Crowley v. Perdue*, 318 F. Supp. 3d 277, 292 (D.D.C. 2017); *Carmichael v. West*, Civ. A. No. 12-1969 (BAH), 2015 WL 10568893, at *7 (D.D.C. Aug. 31, 2015)). As the court explained in *Carmichael*, however, "[c]ourts have expressed concern . . . about the use of the *Daubert* analysis at the summary judgment stage, instructing that '[b]ecause the summary judgment process does not conform well to the discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage.'" 2015 WL 10568893, at *7 (quoting *Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997)).

Faced with a challenge to expert witnesses at the summary judgment stage, a member of this Court declined to consider such an argument and "prefer[red] to evaluate [that] argument in a motion *in limine* and at a *Daubert* hearing, instead of while resolving a motion for summary judgment." *Landmark Health Sols., LLC v. Not For Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 138 (D.D.C. 2013); *see also Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 227, 238 (D.D.C. 2011) ("The proper vehicle for raising such issues is a motion *in limine* filed in the context of pretrial proceedings and, if necessary, the Court shall consider a request that a *Daubert* hearing be held to evaluate [the expert's] proffered testimony."). This Court is guided by the well-established principle that "[t]rial courts are afforded substantial latitude in deciding the procedure necessary to test the sufficiency of a potential expert." *Landmark Health Sols., LLC*, 950 F. Supp. 2d at 138 (citation and internal quotation marks omitted). This Court will not consider the Defendants' arguments challenging Dr. Porter as an expert at this juncture without a *Daubert* hearing. *See Kumho Tire Co.*, 526 U.S. at 152 (explaining that trial judges have "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability"). The Defendants may raise its arguments challenging Dr. Porter as an expert and his proposed expert

testimony "via a [motion *in limine*] followed by the *Daubert* hearing, to be scheduled shortly thereafter." *Landmark Health Sols., LLC*, 950 F. Supp. 2d at 138.

### C. Whether Mr. Williams Establishes the Applicable Standard of Care

Neither party disputes that Mr. Williams must prove the standard of care based on expert testimony. *See* Defs.' Mem., ECF No. 44-1 at 19, 21; *see also* Pl.'s Mem., ECF No. 46-1 at 22. But the parties disagree on the applicable standard of care. *Compare* Pl.'s Mem., ECF No. 46-1 at 18, *with* Defs.' Mem., ECF No. 44-1 at 7, 21-25. Mr. Williams argues that the Defendants failed to meet the following standard of care identified in Dr. Porter's expert report:

> [E]valuation and treatment for cellulitis at minimum, would have been to evaluate the extremity or area of concern with a history and physical exam consisting of, but not limited to, the appearance of the skin, observation of fluid collection, color and collection of fluid for culture if drainage was present, temperature of the skin compared to other areas, sensation and laboratory testing. In addition to not practicing within the standard of care there were no follow-up instructions given to advise Mr. Williams if or when to come back if he were to have complications, worsening symptoms or incomplete/poor response to the treatment given.
>
> If NP McGarrah would have performed even some of the aforementioned exams or test to the lower extremity, or followed up via phone call or in person with Mr. Williams, the chances of earlier detection, treatment, and reduce

> suffering would have been improved for
> Mr. Williams. It is very likely that if a
> lower extremity exam had been properly
> performed, evaluated and treated with the
> proper spectrum of antibiotics, that
> Mr. Williams would not have had to undergo
> lifesaving medical treatment that left him
> with a career ending outcome (as a personal
> trainer) due to significantly decreased
> physical capacity, overall decrease in quality
> of life, chronic swelling, extremity and joint
> pain, and neurological dysfunction.

*Id*. at 18 (quoting Dr. Porter's Expert Report, Pl.'s Ex. C, 46-4
at 31-32).

The Defendants argue that Dr. Porter's proposed standard of
care is the "wrong" one, Defs.' Mem., ECF No. 44-1 at 22,
because "the standard of care must involve the appropriate
treatment for a patient with a puffy thyroid and a swollen left
foot," *id*. at 23. In the Defendants' view, Dr. Porter advocates
for "a standard of care for the treatment of *cellulitis*, which
is off the mark because there is no evidence that [Mr. Williams]
had cellulitis on October 30, 2013." *Id*. at 21. The Defendants
contend that "[e]ven if [Mr. Williams] did suffer from
cellulitis on that day, Dr. Porter's proposed standard is
inadmissible because it is not a nationally recognized standard,
but rather his own personal view of what the treatment for
cellulitis should have been." *Id*. According to the Defendants,
"[a] complaint of stiffness, swelling and skin with 'a little
bit of reddish tint' does not necessarily mean that [Mr.

Williams] had, or would have, cellulitis in his left foot." *Id*. at 23. The Defendants point out that Dr. Porter "grounded his proposed standard of care on a condition that was not apparent when [NP] McGarrah examined [Mr. Williams]." *Id*.

In response, Mr. Williams argues that "[t]here is absolutely nothing in NP McGarrah's treatment note that supports [the] Defendants' [new-found] contention that [NP McGarrah] did in fact examine [Mr. Williams'] left foot on October 30, 2013." Pl.'s Mem., ECF No. 46-1 at 23. According to Mr. Williams, "Dr. Porter will assist the trier of fact in understanding the national standard of care in a clinical setting for a healthy active adult (in this instance a person who completed a twelve mile obstacle course), having no known infirmities but for some reason is ambulating with a cane due to swelling and stiffness in a lower extremit[y]." *Id*. at 24.

The Defendants argue—and Mr. Williams does not dispute—that Dr. Porter's proposed standard of care regarding cellulitis was the wrong standard of care. Defs.' Reply, ECF No. 47 at 5. In the absence of expert testimony establishing the applicable standard of care, Mr. Williams' negligence claims fail. *See, e.g.*, *Burke v. Air Serv Int'l, Inc*., 685 F.3d 1102, 1105–06 (D.C. Cir. 2012) (explaining that a plaintiff's failure to present expert testimony to establish the standard of care may justify the grant of summary judgment in favor of the

defendant); *Richardson v. Korson*, 905 F. Supp. 2d 193, 197 (D.D.C. 2012) (explaining that a plaintiff "must present evidence on the standard of care to survive summary judgment on his negligence claim"). For the reasons explained below, however, the Court will re-open discovery for the limited purpose of permitting Mr. Williams to supplement Dr. Porter's expert report or retain a new expert as to the applicable standard of care.

### D. Dr. Porter's New Expert Opinions

Without addressing the issue of whether the standard of care regarding cellulitis was the correct one, Mr. Williams presents two new opinions in his opposition brief. *See* Pl.'s Mem., ECF No. 46-1 at 23-24; *see also* Defs.' Reply, ECF No. 47 at 5-6. The Defendants argue that Mr. Williams attempts to amend or supplement his expert disclosures without filing a proper motion to do so, and he attempts to rely on the two new opinions that are untimely and inappropriate. Defs.' Reply, ECF No. 47 at 6-8.

Under Federal Rule of Civil Procedure 26, the parties must disclose their expert witnesses, *see* Fed. R. Civ. P. 26(a)(2)(A), and provide an expert report for each expert containing "a complete statement of *all* opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; and "any

exhibits that will be used to summarize or support [the opinions]," Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Under Rule 26(a)(2)(D), each expert report must be disclosed "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party's failure to disclose information as required by Rule 26(a) triggers Rule 37.

Under Rule 37(b)(2)(A)(ii), the Court may prohibit a party from the introduction of designated matters into evidence if the party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(ii). A party's failure to make the Rule 26(a) disclosures results in the party not being permitted to use that information, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) is a self-executing sanction." *Norden v. Samper*, 544 F. Supp. 2d 43, 49 (D.D.C. 2008). "The proponent of the evidence bears the burden of showing that the failure to disclose the evidence 'was substantially justified or is harmless.'" *Moore v. Napolitano*, 926 F. Supp. 2d 8, 25 n.12 (D.D.C. 2013) (quoting Fed. R. Civ. P. 37(c)(1)).

Here, it is undisputed that the new expert opinions in Mr. Williams' opposition brief were disclosed after the close of discovery. Mr. Williams' first new opinion is that "[Dr. Porter] will use the VA's own guidelines, a national standard, which clearly states '[m]edical documentation is required for all

22

services provided to a Veteran under the [VA].'" Pl.'s Mem., ECF No. 46-1 at 23 (quoting Pl.'s Ex. F, ECF No. 46-4 at 60). Dr. Porter relies on the TriWest HealthCare Alliance's guidance— "Medical Documentation Requirements" and "Quick Reference Guide – All Regions"—that was not included in his expert disclosures. *See id.* at 22; *see also* Pl.'s Ex. F, ECF No. 46-4 at 60-63. Relying on that guidance, Mr. Williams contends that NP McGarrah's medical notes failed to meet the "minimum requirements for content of medical documentation or records, for VA staff." Pl.'s Mem., ECF No. 46-1 at 22. Specifically, Mr. Williams argues that NP McGarrah's notes did not satisfy a portion of the "Quick Reference Guide": "an executive summary of the encounter to include any procedures performed and recommendations for further testing or follow-up (i.e. discharge summary for inpatient)." *Id.* (quoting Pl.'s Ex. F, ECF No. 46-4 at 63).

The Defendants respond that the "Quick Reference Guide" does not satisfy Rule 702. The Defendants point out that: (1) the "Quick Reference Guide" is dated "January 4, 2019, more than four years after [Mr. Williams'] visit to the [VAMC]"; (2) Mr. Williams did not disclose the document in his expert disclosures; and (3) Mr. Williams attached the document as an exhibit to his opposition brief after Dr. Porter's deposition. Defs.' Reply, ECF No. 47 at 7. The Defendants argue that

Mr. Williams alleges for the first time in his opposition brief that "his injuries were due to a breach of the standard of care relating to medical documentation, and [Mr. Williams] fails to explain how such a breach could possibly have caused his injuries." *Id.*

For the second new opinion identified in his opposition brief, Mr. Williams contends that Dr. Porter will use "nationally accepted standards" to: (1) "outline the appropriate clinical testing and laboratory testing that should occur in said circumstance and the appropriate manner in which to escalate the treatment of the patient"; and (2) "assist the trier of fact in understanding the national standard of care in a clinical setting for a healthy active adult (in this instance a person who completed a twelve mile obstacle course), having no known infirmities but for some reason is ambulating with a cane due to swelling and stiffness in a lower extremit[y]." Pl.'s Mem., ECF No. 46-1 at 24. Dr. Porter relies on a publication, entitled "Practice Guidelines for the Diagnosis and Management of Skin and Soft Tissue Infections: 2014 Update by the Infectious Diseases Society of America," which was published in 2014. Pl.'s Ex. H, ECF No. 46-4 at 88-130. Specifically, Mr. Williams cites to subsection IV—"What Is Appropriate for the Evaluation and Treatment of Erysipelas and Cellulitis?"—in that publication. *Id.* (citing Pl.'s Ex. H, ECF No. 46-4 at 93-104).

According to Mr. Williams, Dr. Porter "supplemented his deposition testimony with the article [outlining] where he received his authority." Pl.'s Mem., ECF No. 46-1 at 26.

The Defendants disagree with Mr. Williams' assertion that Dr. Porter supplemented his deposition testimony, noting that "a party may [not] 'supplement' an expert's sworn deposition testimony by subsequently producing documentation that had not been previously disclosed." Defs.' Reply, ECF No. 47 at 8 n.3. With respect to the second of the two new opinions, the Defendants point out that the "publication, which also was produced to [the] Defendants *after* Dr. Porter's deposition, involves a summary of recommendations to new guidelines for skin and soft tissue infections, and was issued in July 2014, more than eight months after Plaintiff's visit to the [VAMC]." *Id*. at 7-8. The Defendants argue that "Dr. Porter must establish a *nationally applicable* standard of care" and "Dr. Porter has not done that." *Id*. at 7.

Asserting that Mr. Williams attempts to "shift the standard of care from cellulitis to 'skin and soft tissue infections,'" the Defendants contend that "there is no evidence that [Mr. Williams] had cellulitis or any other skin or soft tissue infection on October 30, 2013" because "[Mr. Williams] testified that his left foot was stiff, swollen and had a 'reddish' color." *Id*. at 8. The Defendants go on to argue that

Mr. Williams should not be allowed to offer an expert opinion about the standard of care for skin-related infection treatment without factual support, and that the Court should reject Mr. Williams' "unjustified and untimely effort to replace the withdrawn opinions with new, undisclosed, equally inadmissible opinions." *Id.*

Although the Court agrees that Mr. Williams' disclosure of the expert disclosures and new opinions was untimely, the relevant question is whether Mr. Williams' failure to disclose the new expert opinions and the supporting documents was harmless. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Neither party focuses on the issue of whether the failure to disclose was substantially justified. *See* Pl.'s Mem., ECF No. 46-1 at 15-26; *see also* Defs.' Reply, ECF No. 47 at 6-8. The Defendants do not argue—and the Court cannot find—that the disclosure of the late expert disclosures was not harmless. *See* Defs.' Reply, ECF No. 6-8. While the Defendants contend that the expert disclosures and new expert opinions were untimely, *id.* at 6, 8, the Defendants fail to mention the limited exception in Rule 26(e), *see id.*

Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). "This rule 'permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.'" *Richardson*, 905 F. Supp. 2d at 199 (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)). And "supplemental reports are permitted under Rule 26(e)(1) only in the following situations: (1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete." *Minebea Co*., 231 F.R.D. at 6.

It is undisputed that the "Quick Reference Guide" supporting one of the new expert opinions was not available at the time of Dr. Porter's initial expert report, dated August 15, 2018, because the "Quick Reference Guide" bears the date of January 4, 2019. *See* Pl.'s Ex. C, ECF No. 46-4 at 27; *see also* Pl.'s Ex. F, ECF No. 46-4 at 60. Discovery, however, closed on March 13, 2019, Min. Order of Jan. 31, 2019, and the Court

directed Mr. Williams to produce certain requested documents to the Defendants by no later than April 5, 2019, Min. Order of Apr. 1, 2019. There is no dispute that the article—"Practice Guidelines for the Diagnosis and Management of Skin and Soft Tissue Infections: 2014 Update by the Infectious Diseases Society of America"—was available to Dr. Porter at the time he submitted his expert report given that the article was published in 2014. *See* Pl.'s Ex. C, ECF No. 46-4 at 27; *see also* Pl.'s Ex. H, ECF No. 46-4 at 88. Nonetheless, the Court cannot find that the article's late disclosure "blindside[d] [the] [D]efendants with new information" in contravention to Rule 26's prohibition of unfair surprises at trial. *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 n.16 (D.D.C. 2011). But the "new opinions" could have blindsided the Defendants. *Id.*

That being said, "the trial court [has] wide latitude to receive evidence as it sees fit." *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001). "[T]he Court may 'exercise considerable discretion in handling discovery matters,' including deciding whether to reopen or extend discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 137 (D.D.C. 2012) (quoting *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)); *accord Barnes v. District of Columbia*, 289 F.R.D. 1, 7 (D.D.C. 2012) ("Deciding whether to extend

discovery is within the sound discretion of the trial court.").

With these principles in mind, the Court will permit additional, limited discovery in this case. "While it is certainly disruptive to the efficient management of this case to re-open discovery—especially where [Mr. Williams] and his expert had countless opportunities to remedy deficiencies in the report during the extended period for discovery—the Court finds that the harm to [Mr. Williams] of precluding the [late-filed disclosures and opinions] outweighs this disruption." *Richardson*, 905 F. Supp. 2d at 200. There is no question that Mr. Williams bears the burden of establishing the nationally applicable standard of care based on expert testimony, and the Court cannot find that Mr. Williams has met his burden to do so. But the Defendants do not argue that prejudice will ensue from Mr. Williams' request for leave to either amend Dr. Porter's testimony or substitute a different expert. *See* Defs.' Reply, ECF No. 47 at 14; *see also* Pl.'s Mem., ECF No. 46-1 at 29.

The Court discerns no harm or prejudice to the Defendants because the Court has not set a trial date in this case. *See Richardson*, 905 F. Supp. 2d at 200 (finding no prejudice where a party submitted untimely supplemental expert materials and no trial date had been set by the court). The mere passage of time is not enough to demonstrate prejudice where defendants, as here, do "not describe any significant prejudice [that they]

would suffer from reopening discovery for the limited purpose of adding [a medical] expert." *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 327 (D.D.C. 2012). The Court will re-open discovery for the limited purpose of permitting Mr. Williams to either file a supplemental expert report or retain a new expert witness for him to present expert testimony to establish the applicable standard of care. Accordingly, the Court **GRANTS** Mr. Williams' request for leave to amend his expert opinions or disclose a new expert, and **DENIES WITHOUT PREJUDICE** the Defendants' motion for summary judgment.[7] The Defendants may renew their motion after the limited discovery.

\*     \*     \*

Having found that Mr. Williams did not comply with the applicable rules governing discovery, "[i]t is within the Court's discretion to impose sanctions—*e.g.*, the imposition of costs—on a party who has failed to comply with the rules governing discovery." *Richardson*, 905 F. Supp. 2d at 201 (ordering the plaintiff to bear costs of his expert's deposition

---

[7] Having decided that additional, limited discovery is warranted, the Court need not address the Defendants' remaining arguments that: (1) the Defendants did not breach the standard of care, *see* Defs.' Mem., ECF No. 44-1 at 28-30;(2) Mr. Williams' negligent supervision claim fails "because [he] cannot establish the applicable standard of care or demonstrate that [the] Defendant[s] breached that standard of care," *id*. at 30; and (3) Mr. Williams cannot demonstrate that the Defendants had actual or constructive knowledge, *id*. at 30-31.

where his expert made untimely supplemental submissions). The Court therefore orders Mr. Williams to bear the cost of his expert's deposition.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Mr. Williams' request for leave to amend his expert opinions or disclose a new expert, and **DENIES WITHOUT PREJUDICE** Defendants' Motion to Preclude Expert Opinions and for Summary Judgment. Mr. Williams shall bear the costs of his expert's deposition. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **March 20, 2020**