**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAMOND LEE WILLIAMS,　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　　　Plaintiff,　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　) | Civil Action No. 16-2062 (EGS) |
| 　　　　　　　　　　　　　　　　) | |
| U.S. DEPARTMENT OF VETERANS　　) | |
| AFFAIRS,　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　　　Defendant.　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANTS' EXPERT SHMUEL SHOHAM, MD

Pursuant to the Federal Rule of Evidence (hereinafter referred to as "F.R.E") 702, 703, 401 and 403, Damond L. Williams (hereinafter referred to as "Plaintiff") submits this Memorandum in support of his Motion in Limine to Exclude Certain Testimony of Defendants' Expert Shmuel Shoham, MD (hereinafter referred to as "Dr. Shoham"). Dr. Shoham is an Associate Professor at Johns Hopkins University School of Medicine. In addition, he is also the Associate Director of the Transplant and Oncology Infectious Diseases at the same institution. Further, he is certified by the American Board of Internal Medicine (Infectious Diseases) (hereinafter referred to as "ABIM").

However, Dr. Shoham is not board certified in emergency, primary care, or internal medicine[1]. Nor does anything in his expert disclosure delineate that he has experience or certification in management of emergency, primary care, or internal medicine nurse practitioners.

---

[1] Dr. Shoham was ABIM certified in Internal Medicine in 08/1997 and 11/2007, per the Clinical section of Defendants' Disclosure.

In Dr. Shoham's Personal Qualifications section of Defendants' Expert Disclosure it states: "*I am the author or co-author of over 100 original articles, book chapters and topic reviews*." Moreover, in the same section it also states: "*I serve as a reviewer and expert consultant to multiple journals, professional societies and government agencies in the US and abroad…*" However, in Defendants' expert disclosure there is no specific cite to a source, article, or journal which specifically provides medical underpinning for any opinion or conclusion offered by Dr. Shoham.

Further, Defendants contradict Dr. Shoham's December 5, 2018, expert opinion. Specifically, as it relates to the examination of Plaintiff's left foot by Nurse Practitioner Ms. Marguerite McGarrah (hereinafter referred to as "NP McGarrah"), Dr. Shoham's December 5, 2018 report states: "[*c*]*onsistent with the standard of medical care for such a circumstance, he was therefore not evaluated for a lower extremity infection*."  However, in Defendants' September 30, 2019 (Docket No. 47), Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Defendants' state: "*because the Nurse Practitioner examined Plaintiff's left foot, which is exactly what Dr. Porter said should have been done*." See page 1. "[*b*]*ecause the parties agree that Nurse Practitioner McGarrah examined Plaintiff's left foot on October 30, 2013.*" See page 8. The acknowledgement and acceptance by Defendants, that their nurse practitioner examined Plaintiff's left foot on October 30th, 2013, is a substantive contradiction that cannot be cured by Defendants at this juncture.

In addition, the fact that Dr. Shoham cites no authority for his opinion and does not provide a cited basis for his opinion, compounded by the fact that his opinion is contradicted by Defendants' material change in position (subsequent omission that their NP McGarrah examined

2

Plaintiff's left foot on September 30th), should preclude him from testifying about the applicable standard of care and whether or not Defendants' assessment and treatment of Plaintiff met the applicable standard of care. Further, Dr. Shoham being an expert in the area of infectious disease does not add value or assist this Honorable Court in making a finding. This case pivots on if there was a departure from the standard of care by Defendants at the initial assessment and treatment phase, rather than assessing the standard of care for the lifesaving surgery and treatments Plaintiff underwent, post Defendants' breach of duty.

## BACKGROUND

Plaintiff served as an aircraft fuel maintenance engineer in the Air Force until he was honorably discharged in 1997. After separation from the military Plaintiff worked for over fifteen (15) years, in different countries and the United States, using the trade he learned and developed in the United States Air Force. Ultimately, Plaintiff decided to leave the industry because of the inherit risk of daily working with toxic chemicals and having to consistently contort his tall physical frame into small fuel engines and other airplane compartments.   Plaintiff followed his passions and eventually became an independent, personal physical fitness trainer.

On or about October 20, 2013, Plaintiff participated in an athletic event, "Tough Mudder," which involved completing an obstacle course by climbing rope, pulling stones, carrying logs, running up hills, running down hills, pulling sleds, and climbing walls.  During the competition, a pebble entered Plaintiff shoe, causing a scrape to his left foot. After cleaning it, Plaintiff applied a bandage to his left foot to stop the bleeding.   A few days later, Plaintiff experienced "stiffness" and "swelling" in his left foot, making it difficult for him to walk.  On October 29, 2013, Plaintiff called Defendants' VAMC's Advice Line, his noted complaint was

about an infection in his right lower molar and swelling and pain in his right jaw and the back of his throat."

On October 30, 2013 (hereinafter referred to as "October 30th") Plaintiff entered the Washington DC VA hospital, ambulating with a cane due to swelling in his left foot. Prior to these events Plaintiff was in great physical condition with no circulatory, nerve or organ system issues. However, he previously had oral surgery procedure, hence his complaints of swelling in his right jaw and the back of his neck. On October 30th Plaintiff was thirty-eight (38) years old.

Upon arriving at the Defendants' primary care clinic, at their main Washington DC hospital, Plaintiff was ultimately assessed and treated by Defendants' nurse practitioner NP McGarrah. NP McGarrah's clinical notes state: her assessment involved an examination of Plaintiff's mouth, noting "slight swelling on the right side of his jaw. NP McGarrah also noted that Plaintiff's mouth was "unremarkable," the "thyroid feels puffy," and there was "puffiness" on the right side of his neck that "extends around to the thyroid. Ultimately, NP McGarrah prescribed Plaintiff with Penicillin VK noting "some misgivings, in light of past history and concern for antibiotic resistance.  Although Plaintiff is a non-drinker (alcohol), non-smoker, and non-drug user (illicit and illegal), Plaintiff contends that NP McGarrah counseled him on drug seeking behavior.

Initially, in their Answer, Defendants denied that NP McGarrah ever examined Plaintiff's foot and as noted above in Dr. Shoham's December 5, 2018 export report it offers that an examination of Plaintiff's left foot was not medically necessary or required.  However, after the March 4, 2019, depositions of Plaintiff and Plaintiff's former expert witness Fernando Porter, MD; Defendants in their motion for Summary Judgment and in their rebuttal, acknowledge,

accept, and agree that NP McGarrah did in fact examine Plaintiff's left foot on October 30th. Plaintiff stated in his deposition, that on October 30th, he removed his shoe and left sock so NP McGarrah could looked at his left foot. There is no notation about this examination in NP McGarrah's October 30th, clinical assessment and treatment notes. Moreover, no tests or labs were ordered by NP McGarrah, nor did she provide any follow-up instructions as it relates to Plaintiff's left foot or any restrictions for Plaintiff.

Shortly thereafter, Plaintiff took a flight to Seattle, Washington to collect items from storage. Prior to returning to live in the Washington DC metro region in 2010, Plaintiff lived in the Washington state area working as an aircraft fuel maintenance engineer. Plaintiff still had some swelling but on November 2, 2013, Plaintiff's health rapidly started deteriorating and by November 3, 2013 he was admitted to a Seattle, Washington area hospital with a white blood cell count of forty-three thousand (43,000) and he could no longer walk. Plaintiff told the Seattle, Washington medical intake staff and medical providers that his chief complaints were "Foot Swelling" and "Dental Pain" during his visit at the first medical center[2].

On November 3, 2013 Plaintiff was transferred to a second medical center, that had more advance capabilities for infectious disease treatment.  There, Plaintiff was diagnosed with "Left leg cellulitis" and "NECROTIZING FASCIITIS" on November 4, 2013. Under the "Physical Exam" section in the doctor's notes, it contains the following "Musculoskeletal" description:

> left lower leg with erythema, bullae below the knee to the foot, leg is swollen and edematous compared to right, popped blisters contained clear yellowish/orange fluid, leg superior to knee is normal in caliber, leg is nontender, normal sensation, ROM is limited by swelling but able to move toes and foot at the ankle.

---

[2] Plaintiff was referencing what he told Defendants', specifically NP McGarrah on October 30, 2013, during his medical evaluation and treatment.

On November 4, 2013, Plaintiff underwent emergency surgery for his skin-related infections, and he spent approximately ten (10) days in the hospital. Subsequent to the surgery and discharge, he spent a considerable amount of time in a local Seattle Washington extended stay hotel because he could not travel immediately. Upon returning to the Washington DC Metro region, Plaintiff underwent months recovering in therapy.  He can longer work as a personal trainer. He attempted to go back to work as an aircraft fuel maintenance engineer, but he can longer work in that field either, due to his physical limitations, developed post this course of events. Plaintiff now drives for Uber as an independent contractor but swelling in his left leg, ankle, and foot and nerve pain, which onset after these events, prevent him driving as much as he would desire.

## ARGUMENT

I. **Defendants' Expert lack of referencing or citing to supporting authority precludes him from Testifying about the applicable standard of care.**

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. Kumho Tire Co.,Ltd, v. CurMichael, etc., 526 US. 137, 141 (1999). F.R.E. 702 requires that such testimony satisfy three separate relevance and reliability standards: (1) expert testimony must be based upon sufficient facts or data, (2) expert testimony must be the product of reliable principles and methods, and (3) the expert witness must have applied the principles and methods reliably to the facts of the case. (F.R.E. 702.)

Dr. Shoham's testimony will be at odds with the mutually agreed upon fact that Defendants' NP actually examined Plaintiff's left foot on October 30th.  In his December 5, 2018, report Dr. Shoham clearly articulates that there was no basis to assess or treat Plaintiff's left foot on said date. When Defendants re-submitted their Expert Disclosures, they did not

reconcile their shift in position with their expert's December 5, 2018 offering. Thus, Dr. Shoham's potential testimony to this Honorable Court is not based on agreed facts and should not be permitted.

Further, Dr. Shohman is an infectious diseases expert. However, his opinion in the pending matter is not based on agreed fact nor does he directly cite any article that specifically supports how he reached his opinion and conclusion in this matter.  Defendants cannot wait until the day of trial to introduce the specific article and sources Dr. Shoham is basing his testimony upon. Further, his opinion does not state with specificity which articles, journals, or best practices he is applying to the facts of the case. Moreover, even if he did state the aforementioned, his testimony should still be precluded because the facts he is relying upon are different from Plaintiff and Defendants.

Notwithstanding the issue of Dr. Shoham basing his opinion on the wrong set of facts, prong two is most fundamentally at issue. As explained in the notes to F.R.E. 702 *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593-95 (1993) set forth a non-exclusive for trial courts to use in assessing reliability of scientific expert testimony. The specific factors explained by the *Daubert* Court are:

> *(1)* Whether the experts technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been greatly accepted in the scientific community (F.R.E 702 Advisory Committee Notes.)

Dr. Shohman's opinion is not supported with any stated objective data to sustain his subjective analysis. Thus, although Dr. Shohman is credentialed and esteemed, F.R.E. 702 precludes him from testifying in this trial regarding the applicable standard of care in this matter.

"In the District of Columbia, the applicable standard of care in a medical malpractice action is 'a national standard, not just a local custom.'" Nwaneri v. Sandidge, 931 A.2d 466, 470 (D.C. 2007) (quoting Travers v. District of Columbia, 672 A.2d 566, 568 (D.C. 1996)). And "the testifying expert must establish that the relevant standard of care is followed nationally, 'either through reference to a published standard, discussion of the described course of treatment with practitioners outside the District at seminars or conventions, or through presentation of relevant data.'" Porter v. McHugh, 850 F. Supp. 2d 264, 268 (D.D.C. 2012) (quoting Strickland v. Pinder, 899 A.2d 770, 773-74 (D.C. 2006)). In general, "the applicable standard of care for all health care professionals and facilities is the 'course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances.'" Bederson v. United States, 935 F. Supp. 2d 48, 74 (D.D.C. 2013) (quoting Strickland, 899 A.2d at 773); see also Travers, 672 A.2d at 568 ("The personal opinion of the testifying expert as to what he or she would do in a particular case . . . is insufficient to prove the applicable standard of care.").

Dr. Shohman's disclosed opinion is based on what he would have done had he been Plaintiff's treating provider on October 30th is not admissible as expert testimony.  Further, even if Dr. Shohman would have been employed by Defendants at the time of Plaintiff's injury, he would not have been Plaintiff's provider on October 30th, because this is not his practice area (emergency, primary, and internal medicine). Thus, Dr. Shohman should not be allowed to testify to the standard of care in this action.

II.     **Dr. Shohman has no stated experience in supervising or managing emergency, primary, or internal medicine nurse practitioners. Therefore, he should be precluded from testifying about best practices or methods of a nurse practitioner in this role because it will not assist the trier of fact.**

In most settings, outside of a courtroom, great credence would generally be yielded to Dr. Shoham's opinion on what Defendants' NP should have done in treating Plaintiff on October 30th and requisite standard operating procedures for clinical treatment. However, in this setting Dr. Shoham should be precluded from testifying on these topics because he has not stated experience in this area (managing nurse practitioners).  Further, he is not board certified in emergency, primary care, or internal medicine.  Therefore, any testimony presented to persuade or convince this Honorable Court that Defendant's NP met the standard of care or any testimony related to any aspect of her assessment and treatment of Plaintiff on October 30th should be precluded because it is not relevant, and it will not assist the Court.

Under F.R.E. 401, relevant evidence is that which "has any tendency to make a fact more or less probable that it would be without the evidence," where that "fact is of consequence in determining the action." Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice." F.R.E 403. And although the District Court has broad discretion in weighing evidence under Rule 403's balancing test, exclusion of otherwise admissible, relevant evidence remains "an extraordinary remedy and should be used sparingly." *United States v. Tan,* 254 f.3d 1204, 1211 (10th Cir 2001) (intentional quotation marks and citation omitted). Accordingly, "the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, 1274 (10th Cir. 2000) (internal marks and citation omitted).

In the above section Plaintiff set forth that Dr. Shoham did not rely on any objective sources in opining his opinion. Here, as it specifically relates to any potential testimony by Dr. Shoham review of Defendants' NP assessment and treatment of Plaintiff on October 30th, is irrelevant because it is not his area of practice or expertise. Moreover, any opinion offered here by Dr. Shoham could be unfairly prejudicial because although he is esteemed as an infectious disease expert, he is not an expert in the area of nurse practitioner management in the emergency, primary, and internal medicine settings. Dr. Shoham's unfounded and subjective testimony in this area could appear creditable on its face, potentially creating a latent and unfair basis in favor of Defendants. Dr. Shoham should be precluded from offering any testimony as it relates to assessment and treatment of Plaintiff, by Defendants' NP, in the clinical setting on October 30th.

### Conclusion

For the above stated reasons, Defendants' expert witness, Dr. Shoham, should be precluded from testifying about the applicable standard of care in this matter and about the assessment and treatment performed by NP McGarrah on October 30, 2013.


Date: Monday, September 13, 2021.


Respectfully Submitted,
/s/  André T. Hammel
André T. Hammel
Hammel Law LLC
9701 Apollo Drive | Suite 100
Largo, MD 20774
(240) 393-4935 (Office)
(240) 303-2638 (Fax)
andre.hammel@hamlawus.com
Counsel for Plaintiff

/s/ Danielle P. Turnipseed, Esq.
Danielle P. Turnipseed, Esq.
DCB No.: 1001033
Turnipseed Law, LLC
14306 Royal Forest Lane
Silver Spring, MD 20904
(301) 589-5881
danielle@turnipseedlaw.com
Counsel for Plaintiff